UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GEFT OUTDOOR, L.L.C. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CASE NO. 1:15-cv-01568-SEB-MJD |
| | ) | |
| CONSOLIDATED CITY OF INDIANAPOLIS | ) | |
| AND COUNTY OF MARION, INDIANA, | ) | |
| DEPARTMENT OF METROPOLITAN | ) | |
| DEVELOPMENT, DEPARTMENT OF CODE | ) | |
| ENFORCEMENT, AND METROPOLITAN | ) | |
| BOARD OF ZONING APPEALS, DIVISION 1 | ) | |
| | ) | |
| Defendants | ) | |

## AMENDED COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND PERMANENT INJUNCTION, AND VERIFIED PETITION FOR JUDICIAL REVIEW

Plaintiff, GEFT OUTDOOR, L.L.C. ("Plaintiff" or "GEFT"), by counsel, for its Complaint for Damages, Declaratory Relief, and Permanent Injunction, and Petition for Judicial Review against Defendant Consolidated City of Indianapolis and County of Marion, Indiana; the Department of Metropolitan Development, Department of Code Enforcement, and Metropolitan Board of Zoning Appeals, Division 1[1](collectively, "Defendant" or "City"), states as follows:

Through this lawsuit, among other things, GEFT seeks to enjoin the Defendant from further restraining GEFT's First Amendment rights through continued application of the unconstitutional provisions of Defendant's Sign Ordinance (defined *infra*).  Those provisions are

---

[1] At the hearing during which the West Variance and East Variance (defined *infra*) were heard, the Metropolitan Board of Zoning Appeals, Division 1 ("BZA 1") consisted of Chairperson Joanna Taft, Virginia Roberts (substitute), T.D. Robinson, and Shirley Romine. Mary G. Clark was also in attendance for BZA 1, but recused herself from consideration of the West Variance and East Variance (defined *infra*).

content-based and suppress constitutionally protected political, noncommercial, and commercial speech on signs throughout the City, and have since at least 1995.

**PARTIES**

1.  GEFT is a domestic limited liability company, organized and existing under the laws of the State of Indiana.

2.  GEFT has a principal place of business in the City of Indianapolis, Marion County, State of Indiana.

3.  At all times relevant herein, Defendant was and remains a consolidated city, organized and existing under the laws of and within the State of Indiana, and authorized to sue and be sued.

4.  In the exercise of its governmental functions, the City utilizes the Department of Metropolitan Development ("DMD"), Metropolitan Board of Zoning Appeals ("BZA"), and Department of Code Enforcement ("DCE") as agencies to enforce, apply, and exercise discretion over zoning ordinances of the City.

5.  The DMD is a municipal agency, and was created in accordance with the provisions of Ind. Code §§ 36-3-5-4 & 36-3-4-23 by the Revised Code of the Consolidated City of Indianapolis and County of Marion ("Indianapolis Municipal Code" or "Indpls. Mun. Code") § 231-101, *et seq.* DMD's Division of Planning ("Planning") is responsible for, among other things, filing a written statement with the BZA setting forth Planning's opinion on whether variance petitions filed before the BZA should be granted.

6.  At all times and for all actions relevant herein, the DMD and Planning acted under color of state law; that is, under color of the United States Constitution, Indiana

Constitution, statutes, laws, charter, ordinances, rules, regulations, customs, and usages of the State of Indiana and the City.

7.     The BZA is a citizen board of the City and was created in accordance with the provisions of Ind. Code § 36-7-4-901.  BZA is responsible for, among other things, approving or denying variances from the development standards of the zoning ordinance.

8.     At all times and for all actions relevant herein; the BZA acted under color of state law, that is, under color of the United States Constitution, Indiana Constitution, statutes, laws, charter, ordinances, rules, regulations, customs, and usages of the State of Indiana and the City.

9.     The DCE is a municipal agency, and was created in accordance with the provisions of Ind. Code § 36-3-4-23 by Indianapolis Municipal Code § 226-101, *et seq.*  DCE is responsible for enforcing the City's municipal code.

10.     At all times and for all actions relevant herein; the DCE acted under color of state law, that is, under color of the United States Constitution, Indiana Constitution, statutes, laws, charter, ordinances, rules, regulations, customs, and usages of the State of Indiana and the City.

## **JURISDICTION**

11.     Plaintiff's claims arise under 42 U.S.C. § 1983 and 28 U.S.C. § 2201.  The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§1331, 1343(a)(3), and 1367, the First Amendment and Fourteenth Amendment of the United States Constitution, and Article I, §§ 9 and 23 of the Indiana Constitution.

12.     Venue is proper in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff's claims against Defendants arose in this District.

13.    Defendants are subject to the personal jurisdiction of this Court because the City is a consolidated city located within the State of Indiana.

## FACTUAL BACKGROUND

14.    GEFT is in the business of buying or leasing land upon which to construct, maintain, and/or operate signs to be used for the dissemination of both commercial and noncommercial speech.

### SOUTH PROPERTY

15.    National Wine and Spirits Corporation ("National Wine") is the title owner of real property located at 700 West Morris Street, Indianapolis, Indiana 46225, also known as Local Parcel # 1090263 ("South Property").

16.    Republic National Distributing Company of Indiana, LLC ("Republic National") is the title owner of the structures on the South Property, including a pole sign ("South Sign").

17.    The South Sign is permitted to have its current dimensions by variance petition 97-V2-49, granted by the BZA on June 10, 1997.

18.    The BZA has required the South Sign to display messages consistent with an on-premises business identification sign.  Generally speaking, an on-premises sign is one that is permitted by the City for the display of advertising for only the business located at the same place as the sign (for example, a sign in a restaurant parking lot, advertising for that restaurant or a specific menu item), *see also, infra*.  Republic National operates Cameron Springs at the South Property.

19.    The BZA has specifically mandated that the South Sign only display messages stating either the location of the bottling facility of Cameron Springs; the national headquarters

of Cameron Springs; the home of Cameron Springs; or that the South Property is the location of the Cameron Springs business.

20.     The DCE has enforced the BZA's requirements and mandates for the South Sign under the unconstitutional Sign Ordinance to prevent the South Sign from displaying off-premises commercial and noncommercial speech.

21.     Republic National has leased the South Sign to GEFT.

22.     GEFT holds a valid leasehold interest in the South Sign ("South Lease").

23.     The South Lease permits GEFT to maintain and operate the South Sign.

24.     GEFT desires to display off-premises signs and noncommercial opinion signs on the South Sign.

**WEST PROPERTY**

25.     Robert Woodward is the title owner of real property located at 4305 West Morris Street, Indianapolis, Indiana 46241, also known as Local Parcel # 9042890, also known as State Parcel # 49-11-17-111-021.000-900 ("West Property").

26.     Robert Woodward has leased a portion of the West Property to GEFT.

27.     GEFT holds a valid leasehold interest in the West Property.

28.     On or about February 19, 2015, GEFT obtained sign permit SGN15-00098 from the City to erect, maintain, and operate an outdoor advertising sign on the West Property ("West Permit").  Generally speaking, an outdoor advertising sign is one that is permitted by the City to advertise commercial and noncommercial messages other than those messages for the business located at the location of the sign (for example, a sign advertising for a restaurant down the street from the sign location), *see also infra*.

29.     On or about February 27, 2015, GEFT obtained outdoor advertising sign permit L30052 from the State of Indiana to erect, maintain, and operate an outdoor advertising sign on the West Property.

30.     GEFT owns, maintains, and operates an outdoor advertising sign upon its leasehold interest in the West Property ("West Sign").

<u>**EAST PROPERTY**</u>

31.     Scott B. Casey, Rodney W. Bertram, and CB Development of Indiana, LLC are the title owners of real property located at 5780 East 25th Street, Indianapolis, Indiana 46218, also known as Local Parcel # 7005589, also known as State Parcel # 49-07-27-123-031.000-701 ("East Property").

32.     Scott B. Casey, Rodney W. Bertram, and CB Development of Indiana, LLC have leased a portion of the East Property to GEFT.

33.     GEFT holds a valid leasehold interest in the East Property.

34.     On or about March 13, 2015, GEFT obtained sign permit SGN15-00182 from the City to erect, maintain, and operate an outdoor advertising sign on the East Property ("East Permit").

35.     On or about March 18, 2015, GEFT obtained outdoor advertising sign permit L30063 from the State of Indiana to erect, maintain, and operate an outdoor advertising sign on the East Property.

36.     GEFT owns, maintains, and operates an outdoor advertising sign upon its leasehold interest in the East Property ("East Sign," and together with the West Sign, the "GEFT East/West Signs").

## GEFT EAST/WEST SIGNS

37.     The GEFT East/West Signs are both within six hundred sixty (660) feet of Interstate 70.

38.     GEFT has displayed both commercial and noncommercial speech on the GEFT East/West Signs and anticipates doing so in the future.

39.     GEFT has commenced this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201 seeking injunctive relief, declaratory relief, compensatory damages, as well as costs and attorneys' fees, based upon the unconstitutionality of Indianapolis Municipal Code §§ 734-100 through 734-701, both facially and as applied to GEFT.  Indianapolis Municipal Code §§ 734-100 through 734-701 are hereinafter referred to as the "Sign Ordinance."

## INDIANAPOLIS MUNICIPAL CODE

40.     Since at least January 1, 2013, Indianapolis Municipal Code § 734-207 has provided, "Any sign not exempted from the requirements of obtaining an Improvement Location Permit (ILP) as noted in section 734-201, exempt signs, or identified as a prohibited sign type shall be required to obtain an ILP as stated in Chapter 730, Article III of this Code. . . .  This provision shall not be construed to require an ILP for the routine maintenance or changing of the parts or copy of a sign for which an ILP has previously been issued, including changing a sign face, provided that the maintenance or change of parts or copy of a sign does not alter the surface area, height, or otherwise render the sign nonconforming, or increase the existing degree of nonconformity, with the standards of this chapter."

41.     Since at least January 1, 2013, Indianapolis Municipal Code § 730-300(a) has provided, "[N]o structure shall be located, erected, altered or repaired unless the use, character and location of the structure are in conformity with the provisions of the applicable zoning

ordinance, Official Thoroughfare Plan for Marion County, Indiana, and other ordinances relating to land use, including this ordinance."

42.     Since at least January 1, 2013, Indianapolis Municipal Code § 730-300(b)(1) has provided "No structure shall be located, erected, altered or repaired upon any land within Marion County, Indiana, until an Improvement Location Permit has been applied for by the owner (or authorized agent) thereof and issued by the Metropolitan Development Commission of Marion County, Indiana through the bureau of license and permit services . . . ."

43.     Since at least January 1, 2013, Indianapolis Municipal Code § 730-302 has provided "No permit shall be issued for any structure or use authorized by variance unless the use, character and location thereof shall be in conformity with all requirements and conditions of the variance."

44.     Since at least January 1, 2013, Indianapolis Municipal Code § 734-204(a) has provided, "No sign or sign structure, or part thereof, shall be constructed, erected, converted, enlarged, extended, reconstructed or relocated except in conformity with these regulations."

45.     Since at least January 1, 2013, Indianapolis Municipal Code § 734-501 has defined an "on-premises sign" as "a sign which directs attention to a business, profession, commodity, or service offered on the property on which the sign is located" (hereafter, "On-Premises Sign").

46.     Since at least January 1, 2013, Indianapolis Municipal Code § 734-501 has defined an "off-premises sign" as "a sign which directs attention to a business, profession, commodity, or service offered on the property other than that on which the sign is located" (hereafter, "Off-Premises Sign").

47.     Since at least January 1, 2013, Indianapolis Municipal Code § 734-501 has defined an "advertising sign" as "any off-premises sign which directs attention to any business, profession, product, activity, commodity, or service that is offered, sold, or manufactured on property or premises other than that upon which the sign is located.  Also known as an outdoor advertising sign" (hereafter, "Advertising Sign").

48.     Since at least January 1, 2013, Indianapolis Municipal Code § 734-501 has defined a "noncommercial opinion sign" as "a sign, which does not advertise products, goods, businesses, or services and which expresses an opinion or point of view, such as, a political, religious, or other ideological sentiment or support or opposition to a candidate or proposition for a public election.  A sign which meets the definition of an on-premise sign, an off-premise sign, and/or an advertising sign, shall not be considered a noncommercial opinion sign" (hereafter, "Noncommercial Opinion Sign").

49.     Since at least January 1, 2013, Indianapolis Municipal Code § 734-201(o)(1) has provided that Noncommercial Opinion Signs may be displayed as freestanding signs, with an area no greater than six square feet (6 sq ft), a height no greater than four feet (4 ft), no more than five (5) signs per street frontage, and a setback preventing the signs from being in the public right-of-way or the clear sight triangular area.

50.     Since at least January 1, 2013, Indianapolis Municipal Code § 734-201(o)(2) has provided that Noncommercial Opinion Signs may be displayed as window signs regulated per the applicable zoning district provisions pertaining to window signs.

51.     Since at least January 1, 2013, Indianapolis Municipal Code § 734-201(o)(3) has provided that "[N]oncommercial opinion signs may be displayed on a sign face that has been legally established to display advertising signs, in the same manner and size as an advertising

sign is permitted to be displayed on the same sign face."  Indianapolis Municipal Code § 734-201(o)(3) is hereinafter referred to as the "Noncommercial Exemption."

52.    Since at least January 1, 2013, Indianapolis Municipal Code §§ 734-300 through 734-306 has provided specific development standards for signs based on whether the sign is an On-Premises Sign or Off-Premises Sign.  Indianapolis Municipal Code §§ 734-300 through 734-306 is hereinafter referred to as "Article III."

53.    Since at least January 1, 2013, Indianapolis Municipal Code § 734-306(a)(6) has provided that "No advertising sign shall be permitted which displays video or emitting graphics." Indianapolis Municipal Code § 734-306(a)(6) is hereinafter referred to as the "Digital Ban."

54.    Since at least January 1, 2013, Indianapolis Municipal Code § 734-403(b)(4) has provided that "No [off-premises sign within six hundred sixty (660) feet of the right-of-way of freeways and expressways] shall be permitted which displays video or emitting graphics." Indianapolis Municipal Code § 734-403(b)(4) is hereinafter referred to as the "Highway Digital Ban."

55.    At all times relevant herein, the City has enforced the Digital and Highway Digital Bans to prevent Off-Premises Signs from displaying digital content.

**DIGITAL MESSAGES ON THE GEFT EAST/WEST SIGNS**

56.    GEFT desires to display digital content on the GEFT East/West Signs, but it cannot do so without a variance from the Digital and Highway Digital Bans.

57.    On July 28, 2015, GEFT filed petition 2015-DV1-048 for a variance of development standards with the City, seeking permission to install an LED component and display digital content on the West Sign ("West Variance").

58.     On July 30, 2015, GEFT filed addendum T0000092298 with the Indiana Department of Transportation ("INDOT"), seeking permission to convert the static faces on the West Sign to digital faces ("Addendum 98").

59.     On August 7, 2015, INDOT approved Addendum 98.

60.     On September 17, 2015, a Planning employee informed GEFT that Planning intended to issue a staff report in opposition to the West Variance, recommending that the BZA deny the West Variance.

61.     GEFT contracted with Kenneth Gordon, a licensed electrical contractor with the City, to obtain an electrical permit to upgrade the electrical service to the West Sign in order to install an LED component on and display digital messages on the West Sign.

62.     On September 24, 2015, DCE issued electrical permit ELE15-04371 to Kenneth Gordon to upgrade the existing 100-amp electrical service at the West Property to 200 amps to provide electrical power to the West Sign.

63.     The West Variance was heard by BZA 1 on November 5, 2015.  BZA 1 denied the West Variance.

64.     BZA 1 has not issued findings of fact to support its denial of the West Variance.

65.     According to the Sign Ordinance, GEFT cannot display digital content on the West Sign without violating the Digital and Highway Digital Bans, and facing civil penalties.

66.     Pursuant to Indianapolis Municipal Code §§ 103-3, 730-506, and 734-700; and Ind. Code § 36-1-3-8(1)(10)(B), GEFT faces a civil penalty of $2,500 for the first violation and a daily civil penalty of $7,500 for each subsequent violation of the Digital and Highway Digital Bans by displaying digital content on the West Sign.

67.     The City has deprived GEFT of its ability to fully use and benefit from its West Sign, for which GEFT reasonably believes it could have received up to $60,000 per month in revenue.

68.     On July 28, 2015, GEFT filed petition 2015-DV1-047 for a variance of development standards with the City, seeking permission to install an LED component and display digital content on the East Sign ("East Variance").

69.     On July 30, 2015, GEFT filed addendum T0000092299 with INDOT, seeking permission to convert the static faces on the East Sign to digital faces ("Addendum 99").

70.     On August 7, 2015, INDOT approved Addendum 99.

71.     On September 17, 2015, a Planning employee informed GEFT that Planning intended to issue a staff report in opposition to the East Variance, recommending that the BZA deny the East Variance.

72.     GEFT contracted with Kenneth Gordon to obtain an electrical permit to install electrical service to the East Sign in order to install an LED component on and display digital messages on the East Sign.

73.     On September 24, 2015, DCE issued electrical permit ELE15-04369 to Kenneth Gordon to install a new 200-amp electrical service at the East Property to provide electrical power to the East Sign.

74.     The East Variance was heard by BZA 1 on November 5, 2015.  BZA 1 denied the East Variance.

75.     BZA 1 has not issued findings of fact to support its denial of the East Variance.

76.     According to the Sign Ordinance, GEFT cannot display digital content on the East Sign without violating the Digital and Highway Digital Bans, and facing civil penalties.

77.     Pursuant to Indianapolis Municipal Code §§ 103-3, 730-506, and 734-700; and Ind. Code § 36-1-3-8(1)(10)(B), GEFT faces a civil penalty of $2,500 for the first violation and a daily civil penalty of $7,500 for a second or subsequent violation of the Digital and Highway Digital Bans by displaying digital content on the East Sign.

78.     The City has deprived GEFT of its ability to fully use and benefit from its East Sign, for which GEFT reasonably believes it could have received up to $60,000 per month in revenue.

79.     GEFT now brings this action pursuant to 42 U.S.C. § 1983; the First and Fourteenth Amendments of the United States Constitution; Article I, §§ 9 and 23 of the Indiana Constitution; 28 U.S.C. § 2201; and Indiana Code 36-7-4-1601, *et al.* to (1) declare the Sign Ordinance, Digital Ban, and Highway Digital Ban facially unconstitutional, as well as unconstitutional as applied to GEFT; (2) enjoin the City from enforcing the Sign Ordinance, Digital Ban, and Highway Digital Ban against GEFT; (3) vacate BZA 1's denial of the West Variance and East Variance; and (4) recover damages for the unconstitutional deprivation of GEFT's free speech rights.

## FIRST CAUSE OF ACTION

### THE SIGN ORDINANCE VIOLATES THE FREE SPEECH CLAUSES OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 9 OF THE INDIANA CONSTITUTION

80.     GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

81.     The First Amendment of the United States Constitution, as applied to the States and their political subdivisions through the Fourteenth Amendment of the United States Constitution, protects a citizen from being punished by a governmental entity or individual

acting in his or her official capacity as an agent of that governmental entity, because of said citizen's exercise of free speech.  GEFT possesses those rights.

82.     Article I, § 9 of the Indiana Constitution guarantees Indiana citizens the same rights guaranteed by the First Amendment to the United States Constitution.  GEFT possesses those rights.

83.     The Sign Ordinance, as amended, which became effective January 23, 1995, has established unconstitutional content-based restrictions on speech.  For example, Article III provides specific development standards for signs based on whether the sign is an On-Premises Sign or Off-Premises Sign; an On-Premises Sign may be permitted at a certain location provided it adheres to applicable development standards, but an Off-Premises Sign is prohibited at the same location, even if it conforms to the same development standards.  The Sign Ordinance also requires the City to examine the proposed content of the sign to determine the applicable development standards.

84.     Article III is unconstitutional on its face, and as applied to GEFT, because the City has failed to, and cannot, articulate a compelling and/or substantial governmental interest in providing development standards for On-Premises Signs distinct from the development standards for Off-Premises Signs.

85.     Article III is unconstitutional on its face, and as applied to GEFT, because the City has failed to, and cannot, narrowly draw restrictions based on distinctions between On-Premises Signs and Off-Premises Signs in a manner to directly advance any purported governmental interest.

86.     Because Article III provides the core regulations of the Sign Ordinance, a determination of unconstitutionality as to Article III renders the Sign Ordinance unconstitutional.

87.     The Sign Ordinance is also unconstitutional on its face because it impermissibly favors commercial speech over noncommercial speech.  For example, the Noncommercial Exemption allows Noncommercial Opinion Signs to be displayed on legally-established Advertising Signs (defined as Off-Premises Signs), and the Digital Ban prohibits Off-Premises Signs from displaying digital content; Noncommercial Opinion Signs may not be displayed as digital content, but commercial On-Premises Signs may display digital content.

88.     The Noncommercial Exemption unconstitutionally regulates speech by impermissibly and without sufficient justification favoring commercial speech over protected noncommercial speech by limiting the display of Noncommercial Opinion Signs to Off-Premises Signs, or to small freestanding signs or window signs.

89.     Except under the Noncommercial Exemption, Noncommercial Opinion Signs may only be displayed as small freestanding signs or window signs.

90.     Because the Noncommercial Exemption provides the only widespread protection for noncommercial speech in the Sign Ordinance, a determination of unconstitutionality as to the Noncommercial Exemption renders the Sign Ordinance unconstitutional.

91.     GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying off-premises signs and noncommercial opinion signs on the South Sign, which GEFT reasonably believes could result in up to $15,000 per month in revenue to GEFT.

92.     GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying digital content on the GEFT East/West Signs, which GEFT reasonably believes could have resulted in up to $120,000 per month in revenue to GEFT.

93.     Based on the foregoing, GEFT seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Sign Ordinance unconstitutional on its face, and enjoining the Defendant from enforcing the Sign Ordinance against GEFT, and compensatory damages, pursuant to 42 U.S.C. § 1983, in a sum to be determined at trial.

## SECOND CAUSE OF ACTION

### THE DIGITAL BAN VIOLATES THE FREE SPEECH CLAUSES OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 9 OF THE INDIANA CONSTITUTION

94.     GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

95.     The First Amendment of the United States Constitution, as applied to the States and their political subdivisions through the Fourteenth Amendment of the United States Constitution, protects a citizen from being punished by a governmental entity or individual acting in his or her official capacity as an agent of that governmental entity, because of said citizen's exercise of free speech.

96.     Article I, § 9 of the Indiana Constitution guarantees Indiana citizens the same rights guaranteed by the First Amendment to the United States Constitution.

97.     GEFT's use of the GEFT East/West Signs for advertising purposes is lawful and not misleading and, therefore, constitutes commercial and/or noncommercial speech which is protected from unwarranted governmental regulation by the First Amendment of the United States Constitution, as made applicable to the City through the Fourteenth Amendment of the United States Constitution, and by Article I, § 9 of the Indiana Constitution.

98.     The Digital Ban, which became effective November 17, 2003, has established an unconstitutional content-based regulation on speech.

99.     The Digital Ban is an impermissible infringement and abridgment of GEFT's right to free speech under the First and Fourteenth Amendment of the Unites States Constitution, and Article I, § 9 of the Indiana Constitution.

100.    The Digital Ban is facially invalid, as well as invalid as applied to GEFT because the City has prohibited the display of digital content on Off-Premises Signs and Noncommercial Opinion Signs.

101.    The Digital Ban is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, articulate a compelling and/or substantial governmental interest in prohibiting the display of digital content on Off-Premises Signs and Noncommercial Opinion Signs while permitting the display of digital content on On-Premises Signs.

102.    The Digital Ban is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, narrowly draw restrictions on the display of digital content in a manner to directly advance any purported governmental interest.

103.    GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying digital content on the GEFT East/West Signs, which GEFT reasonably believes could have resulted in up to $120,000 per month in revenue to GEFT.

104.    Based on the foregoing, GEFT seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Digital Ban unconstitutional on its face and as applied to GEFT, and enjoining the City from enforcing the Digital Ban against GEFT, and compensatory damages, pursuant to 42 U.S.C. § 1983, in a sum to be determined at trial.

## THIRD CAUSE OF ACTION

### THE HIGHWAY DIGITAL BAN VIOLATES THE FREE SPEECH CLAUSES OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 9 OF THE INDIANA CONSTITUTION

105.    GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

106.    The First Amendment of the United States Constitution, as applied to the States and their political subdivisions through the Fourteenth Amendment of the United States Constitution, protects a citizen from being improperly punished by a governmental entity or individual acting in his or her official capacity as an agent of that governmental entity, because of said citizen's exercise of free speech.

107.    Article I, § 9 of the Indiana Constitution guarantees Indiana citizens the same rights guaranteed by the First Amendment to the United States Constitution.

108.    GEFT's use of the GEFT East/West Signs for advertising purposes is lawful and not misleading and, therefore, constitutes commercial and/or noncommercial speech which is protected from unwarranted governmental regulation by the First Amendment of the United States Constitution, as made applicable to the City through the Fourteenth Amendment of the United States Constitution, and by Article I, § 9 of the Indiana Constitution.

109.    The Highway Digital Ban, which became effective November 17, 2003, has established an unconstitutional content-based regulation on speech.

110.    The Highway Digital Ban is an impermissible infringement and abridgment of GEFT's right to free speech under the First and Fourteenth Amendment of the Unites States Constitution, and Article I, § 9 of the Indiana Constitution.

111.    The Highway Digital Ban is facially invalid, as well as invalid as applied to GEFT because the City has prohibited the display of digital content on Off-Premises Signs and

Noncommercial Opinion Signs, which are within six hundred sixty (660) feet of the right-of-way of freeways and expressways.

112.     The Highway Digital Ban is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, articulate a compelling and/or substantial governmental interest in prohibiting the display of digital content on Off-Premises Signs and Noncommercial Signs, which are within six hundred sixty (660) feet of the right-of-way of freeways and expressways, while permitting the display of digital content on On-Premises Signs, which are within six hundred sixty (660) feet of the right-of-way of freeways and expressways.

113.     The Highway Digital Ban is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, narrowly draw restrictions upon the display of digital content within six hundred sixty (660) feet of the right-of-way of freeways and expressways in a manner to directly advance any purported governmental interest.

114.     GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying digital content on the GEFT East/West Signs, which GEFT reasonably believes could have resulted in up to $120,000 per month in revenue to GEFT.

115.     Based on the foregoing, GEFT seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Highway Digital Ban unconstitutional on its face and as applied to GEFT, and enjoining the City from enforcing the Highway Digital Ban against GEFT, and compensatory damages, pursuant to 42 U.S.C. § 1983, in a sum to be determined at trial.

## FOURTH CAUSE OF ACTION

### THE SIGN ORDINANCE VIOLATES THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 23 OF THE INDIANA CONSTITUTION

116.    GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

117.    The Fourteenth Amendment of the United States Constitution protects citizens, who are similarly situated, from differential treatment by a governmental regulation that affects the exercise of rights protected under the First Amendment.

118.    Article I, § 23 of the Indiana Constitution guarantees Indiana citizens the same rights guaranteed by the Fourteenth Amendment to the United States Constitution.

119.    Article III allows individuals similarly situated to owners of Off-Premises Signs, like GEFT, to display signs under different development standards, including but not limited to different allowable types of signs, size restrictions, height restrictions, setback restrictions, and digital restrictions.

120.    Article III allows individuals similarly situated to owners of On-Premises Signs, like GEFT, to display off-premises signs and noncommercial opinion signs while owners of On-Premises Signs are prohibited from doing so.

121.    Article III is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, articulate a legitimate governmental interest rationally related to the different development standards for On-Premises Signs and Off-Premises Signs.

122.    Article III is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, articulate a compelling governmental interest in providing different development standards for On-Premises Signs and Off-Premises Signs, or how different

development standards for On-Premises Signs and Off-Premises Signs is the most narrowly tailored regulation to serve any such interest.

123.   Because Article III provides the core regulations of the Sign Ordinance, a determination of unconstitutionality as to Article III renders the Sign Ordinance unconstitutional.

124.   GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying off-premises signs and noncommercial opinion signs on the South Sign, which GEFT reasonably believes could result in up to $15,000 per month in revenue to GEFT.

125.   GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying digital content on the GEFT East/West Signs, which GEFT reasonably believes could have resulted in up to $120,000 per month in revenue to GEFT.

126.   Based on the foregoing, GEFT seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Sign Ordinance unconstitutional on its face, and enjoining the City from enforcing the Sign Ordinance against GEFT, and compensatory damages, pursuant to 42 U.S.C. § 1983, in a sum to be determined at trial.

## FIFTH CAUSE OF ACTION

### THE DIGITAL BAN VIOLATES THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 23 OF THE INDIANA CONSTITUTION

127.   GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

128.   The Fourteenth Amendment of the United States Constitution protects citizens, who are similarly situated, from differential treatment by a governmental regulation that affects the exercise of rights protected under the First Amendment.

129.     Article I, § 23 of the Indiana Constitution guarantees Indiana citizens the same rights guaranteed by the Fourteenth Amendment to the United States Constitution.

130.     The Digital Ban allows individuals similarly situated to owners of Off-Premises Signs, like GEFT, to display digital content on signs.

131.     The Digital Ban is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, articulate a legitimate governmental interest rationally related to prohibiting the display of digital content on Off-Premises Signs while permitting the display of digital content on On-Premises Signs.

132.     The Digital Ban is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, articulate a compelling governmental interest in prohibiting the display of digital content on Off-Premises Signs while permitting the display of digital content on On-Premises Signs, or how such a regulation is the most narrowly tailored regulation to serve any such interest.

133.     GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying digital content on the GEFT East/West Signs, which GEFT reasonably believes could have resulted in up to $120,000 per month in revenue to GEFT.

134.     Based on the foregoing, Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Digital Ban unconstitutional on its face and as applied to Plaintiff, and enjoining the Defendant from enforcing the Digital Ban against Plaintiff, and compensatory damages, pursuant to 42 U.S.C. § 1983, in a sum to be determined at trial.

## SIXTH CAUSE OF ACTION

### THE HIGHWAY DIGITAL BAN VIOLATES THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 23 OF THE INDIANA CONSTITUTION

135.    GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

136.    The Fourteenth Amendment of the United States Constitution protects citizens, who are similarly situated, from differential treatment by a governmental regulation that affects the exercise of rights protected under the First Amendment.

137.    Article I, § 23 of the Indiana Constitution guarantees Indiana citizens the same rights guaranteed by the Fourteenth Amendment to the United States Constitution.

138.    The Highway Digital Ban allows individuals similarly situated to owners of Off-Premises Signs, like GEFT, to display digital content on signs within six hundred sixty (660) feet of the right-of-way of freeways and expressways.

139.    The Highway Digital Ban is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, articulate a legitimate governmental interest rationally related to prohibiting Off-Premises Signs within six hundred sixty (660) feet of the right-of-way of freeways and expressways from displaying digital content while permitting On-Premises Signs within six hundred sixty (660) feet of the right-of-way of freeways and expressways to display digital content.

140.    The Highway Digital Ban is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, articulate a compelling governmental interest in prohibiting Off-Premises Signs within six hundred sixty (660) feet of the right-of-way of freeways and expressways from displaying digital content while permitting On-Premises Signs within six hundred sixty (660) feet of the right-of-way of freeways and expressways to display

digital content, or how such a regulation is the most narrowly tailored regulation to serve any such interest.

141.    GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying digital content on the GEFT East/West Signs, which GEFT reasonably believes could have resulted in up to $120,000 per month in revenue to GEFT.

142.    Based on the foregoing, Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Highway Digital Ban unconstitutional on its face and as applied to Plaintiff, and enjoining the Defendant from enforcing the Highway Digital Ban against Plaintiff, and compensatory damages, pursuant to 42 U.S.C. § 1983, in a sum to be determined at trial.

## SEVENTH CAUSE OF ACTION

### A REQUIREMENT THAT GEFT OBTAIN VARIANCES TO THE DIGITAL AND HIGHWAY DIGITAL BANS FAILS INDIANA'S ASCERTAINABLE STANDARDS RULE

143.    GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

144.    Except for the unconstitutional Sign Ordinance, no provision in the Indianapolis Municipal Code regulates GEFT's display of digital content on the GEFT East/West Signs.

145.    The City has no constitutionally-permissible, ascertainable standards by which to consider GEFT's variance petitions to install LED components and display digital content on the GEFT East/West Signs.

146.    Based on the foregoing, Plaintiff seeks injunctive relief, preventing the City from requiring GEFT to obtain variances to install LED components and display digital messages on the GEFT East/West Signs, and to the extent the City may require said variances, requiring the

City to grant said variances; or alternatively preventing the City from denying and/or delaying disposition of said variances.

## EIGHTH CAUSE OF ACTION

### A REQUIREMENT THAT GEFT OBTAIN IMPROVEMENT LOCATION PERMITS, OR OTHER RELATED APPROVALS, FAILS INDIANA'S ASCERTAINABLE STANDARDS RULE

147.     GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

148.     Except for the Sign Ordinance, no provision in the Indianapolis Municipal Code regulates GEFT's display of digital content on the GEFT East/West Signs.

149.     The City has no constitutionally-permissible, ascertainable standards by which to consider GEFT's request for a permit update/amendment to install LED components on the GEFT East/West Signs and display digital content on the GEFT East/West Signs.

150.     Based on the foregoing, Plaintiff seeks injunctive relief, preventing the City from requiring GEFT to obtain improvement location permits, or other related approvals, to display digital messages on the Signs, and to the extent the City may require said improvement location permits, or other related approvals, requiring the City to grant said improvement location permits, or other related approvals; or alternatively preventing the City from denying and/or delaying disposition of said improvement locations permits, or other related approvals.

## NINTH CAUSE OF ACTION

### VERIFIED PETITION FOR JUDICIAL REVIEW OF BZA 1's DENIAL OF THE WEST VARIANCE

151.     GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

152.   The name and mailing address of the petitioner for the West Variance is:

GEFT Outdoor, L.L.C.
9425 North Meridian Street, #226
Indianapolis, IN  46260

153.   The name and mailing address of BZA 1 is:

Metropolitan Board of Zoning Appeals, Division 1
Current Planning Division
Division of Planning
Department of Metropolitan Development
City-County Building
200 East Washington Street, Room 1842
Indianapolis, IN  46204

154.   On November 5, 2015, BZA 1 denied the West Variance, which sought to convert the West Sign from a static sign to a digital sign in contravention of the current, unconstitutional Sign Ordinance.  GEFT seeks judicial review of this denial.

155.   The following individuals participated in BZA 1's hearing of the West Variance: Pat Andrews, Norman Pace, Gary Chalupo, Ed Locke, and City-County Councilperson Jeff Miller.

156.   BZA 1's denial of the West Variance was specifically directed at GEFT as petitioner of the West Variance.

157.   No administrative remedies exist for a petitioner of a variance that is denied. GEFT has exhausted all available administrative remedies.

158.   GEFT files this verified petition for judicial review on or before December 5, 2015, which is thirty (30) days after the denial of the West Variance.

159.   GEFT will transmit to the Court the original or a certified copy of BZA 1's record of its denial of the West Variance within thirty (30) days after filing this petition, or within further time allowed by the Court.

160.    GEFT has been prejudiced by BZA 1's denial of the West Variance because GEFT cannot display digital content on the West Sign without risk of fine.

161.    BZA 1's denial of the West Variance is contrary to constitutional right, power, privilege, or immunity.  The standards under which BZA 1 considered the West Variance are unconstitutional (*see supra*).   Additionally, GEFT had insufficient notice of the testimony offered by a Planning employee at the November 5, 2015 hearing beyond the Staff Report; certain testimony was not included in the Staff Report published five (5) days prior to the hearing and was first offered during the hearing after GEFT's presentation of evidence, statements, and arguments in support of the West Variance.

162.    BZA 1's denial of the West Variance is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  Without the unconstitutional provisions of the Sign Ordinance, BZA 1 has no ascertainable standards by which to adjudicate the West Variance (*see supra*).

163.    BZA 1's denial of the West Variance is without observance of procedure required by law.  BZA 1 has not filed a copy of its decision, including findings of fact, in the BZA office in contravention of Indiana Code § 36-7-4-919(f) and the BZA's Rules of Procedure, Art. II, § 4, adopted pursuant to Indiana Code § 36-7-4-916.

164.    Based on the foregoing, Plaintiff seeks (1) vacation of BZA 1's denial of the West Variance; (2) a declaration that GEFT need not seek a variance to display digital content on the West Sign; and (3) an injunction prohibiting the City from requiring GEFT to obtain a variance before displaying digital content on the West Sign.

## TENTH CAUSE OF ACTION

### VERIFIED PETITION FOR JUDICIAL REVIEW OF BZA 1'S DENIAL OF THE EAST VARIANCE

165.    GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

166.    The name and mailing address of the petitioner for the East Variance is:

GEFT Outdoor, L.L.C.
9425 North Meridian Street, #226
Indianapolis, IN  46260

167.    The name and mailing address of BZA 1 is:

Metropolitan Board of Zoning Appeals, Division 1
Current Planning Division
Division of Planning
Department of Metropolitan Development
City-County Building
200 East Washington Street, Room 1842
Indianapolis, IN  46204

168.    On November 5, 2015, BZA 1 denied the East Variance, which sought to convert the East Sign from a static sign to a digital sign in contravention of the current, unconstitutional Sign Ordinance.  GEFT seeks judicial review of this denial.

169.    The following individuals participated in BZA 1's hearing of the East Variance: Pat Andrews, Gary Chalupo, Ed Locke, and City-County Councilperson Jeff Miller.

170.    BZA 1's denial of the East Variance was specifically directed at GEFT as petitioner of the East Variance.

171.    No administrative remedies exist for a petitioner of a variance that is denied. GEFT has exhausted all available administrative remedies.

172.    GEFT files this verified petition for judicial review on or before December 5, 2015, which is thirty (30) days after the denial of the East Variance.

173.    GEFT will transmit to the Court the original or a certified copy of BZA 1's record of its denial of the East Variance within thirty (30) days after filing this petition, or within further time allowed by the Court.

174.    GEFT has been prejudiced by BZA 1's denial of the East Variance because GEFT cannot display digital content on the East Sign without risk of fine.

175.    BZA 1's denial of the East Variance is contrary to constitutional right, power, privilege, or immunity.  The standards under which BZA 1 considered the East Variance are unconstitutional (*see supra*).    Additionally, GEFT had insufficient notice of the testimony offered by a Planning employee at the November 5, 2015 hearing beyond the Staff Report; certain testimony was not included in the Staff Report published five (5) days prior to the hearing and was first offered during the hearing after GEFT's presentation of evidence, statements, and arguments in support of the East Variance.

176.    BZA 1's denial of the East Variance is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  Without the unconstitutional provisions of the Sign Ordinance, BZA 1 has no ascertainable standards by which to adjudicate the East Variance (*see supra*).

177.    BZA 1's denial of the East Variance is without observance of procedure required by law.  BZA 1 has not filed a copy of its decision, including findings of fact, in the BZA office in contravention of Indiana Code § 36-7-4-919(f) and the BZA's Rules of Procedure, Art. II, § 4, adopted pursuant to Indiana Code § 36-7-4-916.

178.    Based on the foregoing, Plaintiff seeks (1) vacation of BZA 1's denial of the East Variance; (2) a declaration that GEFT need not seek a variance to display digital content on the

East Sign; and (3) an injunction prohibiting the City from requiring GEFT to obtain a variance before displaying digital content on the East Sign.

## **DEMAND/PRAYER FOR RELIEF**

WHEREFORE, Plaintiff GEFT OUTDOOR, L.L.C., by counsel, respectfully requests a Judgment for the following relief:

A.    On the First Cause of Action, for an Order and Judgment pursuant to 28 U.S.C. § 2201 declaring Indianapolis Municipal Code §§ 734-100 through 734-701 to be unconstitutional on its face and as applied to Plaintiff, and enjoining the Defendant from enforcing Indianapolis Municipal Code §§ 734-100 through 734-701, now or at any time in the future under any amended Sign Ordinance, against Plaintiff in its operation of its Signs, including but not limited to any enforcement actions or imposition of civil penalties against Plaintiff for installing LED components and displaying digital messages on the GEFT East/West Signs or for displaying on-premises and off-premises commercial messages, and/or noncommercial speech on any of the GEFT Signs, and an award of compensatory damages, pursuant to 42 U.S.C. § 1983, to be determined at trial;

B.    On the Second Cause of Action, for an Order and Judgment pursuant to 28 U.S.C. § 2201 declaring Indianapolis Municipal Code § 734-306(a)(6) to be unconstitutional on its face and as applied to Plaintiff, and enjoining the Defendant from enforcing Indianapolis Municipal Code § 734-306(a)(6), now or at any time in the future under any amended Sign Ordinance, against Plaintiff in its operation of the GEFT East/West Signs, including but not limited to any enforcement actions or imposition of civil penalties against Plaintiff for installing

LED components and displaying digital messages on the GEFT East/West Signs, and an award of compensatory damages, pursuant to 42 U.S.C. § 1983, to be determined at trial;

C.     On the Third Cause of Action, for an Order and Judgment pursuant to 28 U.S.C. § 2201 declaring Indianapolis Municipal Code § 734-403(b)(4) to be unconstitutional on its face and as applied to Plaintiff, and enjoining the Defendant from enforcing Indianapolis Municipal Code § 734-403(b)(4), now or at any time in the future under any amended Sign Ordinance, against Plaintiff in its operation of the GEFT East/West Signs, including but not limited to any enforcement actions or imposition of civil penalties against Plaintiff for installing LED components and displaying digital messages on the GEFT East/West Signs, and an award of compensatory damages, pursuant to 42 U.S.C. § 1983, to be determined at trial;

D.     On the Fourth Cause of Action, for an Order and Judgment pursuant to 28 U.S.C. § 2201 declaring Indianapolis Municipal Code §§ 734-100 through 734-701 to be unconstitutional on its face, and enjoining the Defendant from enforcing Indianapolis Municipal Code §§ 734-100 through 734-701, now or at any time in the future under any amended Sign Ordinance, against Plaintiff in its operation of its Signs, including but not limited to any enforcement actions or imposition of civil penalties against Plaintiff for installing LED components and displaying digital messages on the GEFT East/West Signs or for displaying on-premises and off-premises commercial messages, and/or noncommercial speech on any of the

GEFT Signs, and an award of compensatory damages, pursuant to 42 U.S.C. §

1983, to be determined at trial;

E.     On the Fifth Cause of Action, for an Order and Judgment pursuant to 28 U.S.C. §

2201 declaring Indianapolis Municipal Code § 734-306(a)(6) to be

unconstitutional on its face and as applied to Plaintiff, and enjoining the

Defendant from enforcing Indianapolis Municipal Code § 734-306(a)(6), now or

at any time in the future under any amended Sign Ordinance, against Plaintiff in

its operation of the GEFT East/West Signs, including but not limited to any

enforcement actions or imposition of civil penalties against Plaintiff for installing

LED components and displaying digital messages on the GEFT East/West Signs,

and an award of compensatory damages, pursuant to 42 U.S.C. § 1983, to be

determined at trial;

F.     On the Sixth Cause of Action, for an Order and Judgment pursuant to 28 U.S.C. §

2201 declaring Indianapolis Municipal Code § 734-403(b)(4) to be

unconstitutional on its face and as applied to Plaintiff, and enjoining the

Defendant from enforcing Indianapolis Municipal Code § 734-403(b)(4), now or

at any time in the future under any amended Sign Ordinance, against Plaintiff in

its operation of the GEFT East/West Signs, including but not limited to any

enforcement actions or imposition of civil penalties against Plaintiff for installing

LED components and displaying digital messages on the GEFT East/West Signs,

and an award of compensatory damages, pursuant to 42 U.S.C. § 1983, to be

determined at trial;

G.      On the Seventh Cause of Action, for an Order preventing the Defendant from requiring Plaintiff, now or at any time in the future under any amended Sign Ordinance, to obtain variances to install LED components and display digital messages on the GEFT East/West Signs, and to the extent the Defendant may require said variances, requiring the Defendant to support said variances; or alternatively preventing the Defendant from opposing and/or delaying disposition of said variances;

H.      On the Eighth Cause of Action, for an Order preventing the Defendant from requiring Plaintiff, now or at any time in the future under any amended Sign Ordinance, to obtain improvement location permits, or other related approvals, to install LED components and display digital messages on the GEFT East/West Signs, and to the extent the Defendant may require said improvement location permits, or other related approvals, requiring the Defendant to grant said improvement location permits, or other related approvals; or alternatively preventing the City from denying and/or delaying disposition of said improvement locations permits, or other related approvals;

I.      On the Ninth Cause of Action, for an Order vacating the BZA 1's denial of the West Variance, declaring that GEFT need not seek a variance to display digital content on the West Sign; and enjoining the City from requiring GEFT to obtain a variance before displaying digital content on the West Sign.

J.      On the Tenth Cause of Action, for an Order vacating the BZA 1's denial of the East Variance, declaring that GEFT need not seek a variance to display digital

content on the East Sign; and enjoining the City from requiring GEFT to obtain a variance before displaying digital content on the East Sign.

K.      For an award to Plaintiff of costs, disbursements, and reasonable attorneys' fees and expert fees incurred by Plaintiff in connection with this action pursuant to 42 U.S.C. § 1988; and

L.      All other relief just and proper in the premises.


Respectfully submitted,

LEWIS WAGNER, LLP


/s/ *A. RICHARD M. BLAIKLOCK*
A. RICHARD M. BLAIKLOCK, #20031-49
KEENAN M. JONES, #31044-49
*Counsel for GEFT Outdoor, L.L.C.*

LEWIS WAGNER, LLP
501 Indiana Avenue, Suite 200
Indianapolis, IN 46202-6150
Phone:   317-237-0500
Fax:       317-630-2790
Email:    rblaiklock@lewiswagner.com
             kjones@lewiswagner.com

## VERIFICATION

I, Jeffrey S. Lee, am a citizen of the United States and the owner of GEFT Outdoor, L.L.C., plaintiff in this action.  I have read the foregoing Amended Complaint for Damages, Declaratory Relief, and Permanent Injunction, and Verified Petition for Judicial Review, and declare under penalty of perjury under the laws of the United States of America that the facts identified in the Ninth and Tenth Causes of Action (paragraphs 152 – 164, 166 – 178, and all other paragraphs identifying foundational facts and/or definitions) are correct and true to the best of my knowledge and belief, and that those factual matters that are stated upon information and belief are believed by me to be true.

_____
JEFFREY S. LEE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2015, a copy of the foregoing was filed electronically.  Notice of the filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access the filing through the Court's system:

Amanda Dinges
Pamela G. Schneeman
Daniel Bowman
Office of the Corporation Counsel
City-County Building, Ste 1601
200 East Washington St.
Indianapolis, IN  46204


                                        */s/ A. RICHARD M. BLAIKLOCK*
                                        A. RICHARD M. BLAIKLOCK