# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GEFT OUTDOOR, L.L.C. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CASE NO. 1:15-cv-01568-SEB-MJD |
| | ) | |
| CONSOLIDATED CITY OF INDIANAPOLIS | ) | |
| AND COUNTY OF MARION, INDIANA, | ) | |
| DEPARTMENT OF METROPOLITAN | ) | |
| DEVELOPMENT, DEPARTMENT OF CODE | ) | |
| ENFORCEMENT, AND METROPOLITAN | ) | |
| BOARD OF ZONING APPEALS, DIVISION 1 | ) | |
| | ) | |
| Defendants | ) | |

**SECOND AMENDED COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND
PERMANENT INJUNCTION, AND VERIFIED PETITION FOR JUDICIAL REVIEW**

Plaintiff, GEFT OUTDOOR, L.L.C. ("Plaintiff" or "GEFT"), by counsel, for its

Complaint for Damages, Declaratory Relief, and Permanent Injunction, and Petition for Judicial

Review against Defendant Consolidated City of Indianapolis and County of Marion, Indiana; the

Department of Metropolitan Development, Department of Code Enforcement, and Metropolitan

Board of Zoning Appeals, Division 1[1](collectively, "Defendant" or "City"), states as follows:

Through this lawsuit, among other things, GEFT seeks to enjoin the Defendant from

further restraining GEFT's First Amendment rights through continued application of the

unconstitutional provisions of Defendant's Sign Ordinance (defined *infra*). Those provisions are

---

[1]       At the hearing during which the West Variance and East Variance (defined *infra*) were
heard, the Metropolitan Board of Zoning Appeals, Division 1 ("BZA 1") consisted of
Chairperson Joanna Taft, Virginia Roberts (substitute), T.D. Robinson, and Shirley Romine.
Mary G. Clark was also in attendance for BZA 1, but recused herself from consideration of the
West Variance and East Variance (defined *infra*).

content-based and suppress constitutionally protected political, noncommercial, and commercial speech on signs throughout the City, and have since at least 1995.

## PARTIES

1.     GEFT is a domestic limited liability company, organized and existing under the laws of the State of Indiana.

2.     GEFT has a principal place of business in the City of Indianapolis, Marion County, State of Indiana.

3.     At all times relevant herein, Defendant was and remains a consolidated city, organized and existing under the laws of and within the State of Indiana, and authorized to sue and be sued.

4.     In the exercise of its governmental functions, the City utilizes the Department of Metropolitan Development ("DMD"), Metropolitan Board of Zoning Appeals ("BZA"), and Department of Code Enforcement ("DCE") as agencies to enforce, apply, and exercise discretion over zoning ordinances of the City.

5.     The DMD is a municipal agency, and was created in accordance with the provisions of Ind. Code §§ 36-3-5-4 & 36-3-4-23 by the Revised Code of the Consolidated City of Indianapolis and County of Marion ("Indianapolis Municipal Code" or "Indpls. Mun. Code") § 231-101, *et seq.*  DMD's Division of Planning ("Planning") is responsible for, among other things, filing a written statement with the BZA setting forth Planning's opinion on whether variance petitions filed before the BZA should be granted.

6.     At all times and for all actions relevant herein, the DMD and Planning acted under color of state law; that is, under color of the United States Constitution, Indiana

Constitution, statutes, laws, charter, ordinances, rules, regulations, customs, and usages of the State of Indiana and the City.

7.     The BZA is a citizen board of the City and was created in accordance with the provisions of Ind. Code § 36-7-4-901.  BZA is responsible for, among other things, approving or denying variances from the development standards of the zoning ordinance.

8.     At all times and for all actions relevant herein; the BZA acted under color of state law, that is, under color of the United States Constitution, Indiana Constitution, statutes, laws, charter, ordinances, rules, regulations, customs, and usages of the State of Indiana and the City.

9.     The DCE is a municipal agency, and was created in accordance with the provisions of Ind. Code § 36-3-4-23 by Indianapolis Municipal Code § 226-101, *et seq.*  DCE is responsible for enforcing the City's municipal code.

10.    At all times and for all actions relevant herein; the DCE acted under color of state law, that is, under color of the United States Constitution, Indiana Constitution, statutes, laws, charter, ordinances, rules, regulations, customs, and usages of the State of Indiana and the City.

## JURISDICTION

11.    Plaintiff's claims arise under 42 U.S.C. § 1983 and 28 U.S.C. § 2201.  The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§1331, 1343(a)(3), and 1367, the First Amendment and Fourteenth Amendment of the United States Constitution, and Article I, §§ 9 and 23 of the Indiana Constitution.

12.    Venue is proper in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff's claims against Defendants arose in this District.

13.     Defendants are subject to the personal jurisdiction of this Court because the City is a consolidated city located within the State of Indiana.

## FACTUAL BACKGROUND

14.     GEFT is in the business of buying or leasing land upon which to construct, maintain, and/or operate signs to be used for the dissemination of both commercial and noncommercial speech.

### SOUTH PROPERTY

15.     National Wine and Spirits Corporation ("National Wine") is the title owner of real property located at 700 West Morris Street, Indianapolis, Indiana 46225, also known as Local Parcel # 1090263 ("South Property").

16.     Republic National Distributing Company of Indiana, LLC ("Republic National") is the title owner of the structures on the South Property, including a pole sign ("South Sign").

17.     The South Sign is permitted to have its current dimensions by variance petition 97-V2-49, granted by the BZA on June 10, 1997.

18.     The BZA has required the South Sign to display messages consistent with an on-premises business identification sign.  Generally speaking, an on-premises sign is one that is permitted by the City for the display of advertising for only the business located at the same place as the sign (for example, a sign in a restaurant parking lot, advertising for that restaurant or a specific menu item), *see also, infra*.  Republic National operates Cameron Springs at the South Property.

19.     The BZA has specifically mandated that the South Sign only display messages stating either the location of the bottling facility of Cameron Springs; the national headquarters

of Cameron Springs; the home of Cameron Springs; or that the South Property is the location of the Cameron Springs business.

20.     The DCE has enforced the BZA's requirements and mandates for the South Sign under the unconstitutional Sign Ordinance to prevent the South Sign from displaying off-premises commercial and noncommercial speech.

21.     Republic National has leased the South Sign to GEFT.

22.     GEFT holds a valid leasehold interest in the South Sign ("South Lease").

23.     The South Lease permits GEFT to maintain and operate the South Sign.

24.     GEFT desires to display off-premises signs and noncommercial opinion signs on the South Sign.

## WEST PROPERTY

25.     Robert Woodward is the title owner of real property located at 4305 West Morris Street, Indianapolis, Indiana 46241, also known as Local Parcel # 9042890, also known as State Parcel # 49-11-17-111-021.000-900 ("West Property").

26.     Robert Woodward has leased a portion of the West Property to GEFT.

27.     GEFT holds a valid leasehold interest in the West Property.

28.     On or about February 10, 2015, GEFT applied for a sign permit to erect, maintain, and operate an outdoor advertising sign on the West Property.

29.     On or about February 19, 2015, GEFT obtained sign permit SGN15-00098 from the City to erect, maintain, and operate an outdoor advertising sign on the West Property ("West Permit").  Generally speaking, an outdoor advertising sign is one that is permitted by the City to advertise commercial and noncommercial messages other than those messages for the business

located at the location of the sign (for example, a sign advertising for a restaurant down the street from the sign location), *see also infra*.

30. On or about February 27, 2015, GEFT obtained outdoor advertising sign permit L30052 from the State of Indiana to erect, maintain, and operate an outdoor advertising sign on the West Property.

31. GEFT owns, maintains, and operates an outdoor advertising sign upon its leasehold interest in the West Property ("West Sign").

## EAST PROPERTY

32. Scott B. Casey, Rodney W. Bertram, and CB Development of Indiana, LLC are the title owners of real property located at 5780 East 25th Street, Indianapolis, Indiana 46218, also known as Local Parcel # 7005589, also known as State Parcel # 49-07-27-123-031.000-701 ("East Property").

33. Scott B. Casey, Rodney W. Bertram, and CB Development of Indiana, LLC have leased a portion of the East Property to GEFT.

34. GEFT holds a valid leasehold interest in the East Property.

35. On or about March 10, 2015, GEFT applied for a sign permit to erect, maintain, and operate an outdoor advertising sign on the East Property.

36. On or about March 13, 2015, GEFT obtained sign permit SGN15-00182 from the City to erect, maintain, and operate an outdoor advertising sign on the East Property ("East Permit").

37. On or about March 18, 2015, GEFT obtained outdoor advertising sign permit L30063 from the State of Indiana to erect, maintain, and operate an outdoor advertising sign on the East Property.

38.     GEFT owns, maintains, and operates an outdoor advertising sign upon its leasehold interest in the East Property ("East Sign," and together with the West Sign, the "GEFT East/West Signs").

## GEFT EAST/WEST SIGNS

39.     The GEFT East/West Signs are both within six hundred sixty (660) feet of Interstate 70.

40.     GEFT has displayed both commercial and noncommercial speech on the GEFT East/West Signs and anticipates doing so in the future.

41.     GEFT has commenced this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201 seeking injunctive relief, declaratory relief, compensatory damages, as well as costs and attorneys' fees, based upon the unconstitutionality of Indianapolis Municipal Code §§ 734-100 through 734-701, which was in effect when GEFT applied for sign permits for the GEFT East/West Signs, both facially and as applied to GEFT.  Indianapolis Municipal Code §§ 734-100 through 734-701, which was in effect when GEFT applied for sign permits for the GEFT East/West Signs, are hereinafter referred to as the "Sign Ordinance."[2]

## INDIANAPOLIS MUNICIPAL CODE

42.     Since at least January 1, 2013, Indianapolis Municipal Code § 734-207 has provided, "Any sign not exempted from the requirements of obtaining an Improvement Location Permit (ILP) as noted in section 734-201, exempt signs, or identified as a prohibited sign type shall be required to obtain an ILP as stated in Chapter 730, Article III of this Code. . . .  This provision shall not be construed to require an ILP for the routine maintenance or changing of the

---

[2]     The City amended the Sign Ordinance on or about November 30, 2015.  (*See infra*, pp.14-16).  Indianapolis Municipal Code §§ 734-100 through 734-701, which is currently in effect, is hereinafter referred to as the "Amended Sign Ordinance."

parts or copy of a sign for which an ILP has previously been issued, including changing a sign face, provided that the maintenance or change of parts or copy of a sign does not alter the surface area, height, or otherwise render the sign nonconforming, or increase the existing degree of nonconformity, with the standards of this chapter."

43.     Since at least January 1, 2013, Indianapolis Municipal Code § 730-300(a) has provided, "[N]o structure shall be located, erected, altered or repaired unless the use, character and location of the structure are in conformity with the provisions of the applicable zoning ordinance, Official Thoroughfare Plan for Marion County, Indiana, and other ordinances relating to land use, including this ordinance."

44.     Since at least January 1, 2013, Indianapolis Municipal Code § 730-300(b)(1) has provided "No structure shall be located, erected, altered or repaired upon any land within Marion County, Indiana, until an Improvement Location Permit has been applied for by the owner (or authorized agent) thereof and issued by the Metropolitan Development Commission of Marion County, Indiana through the bureau of license and permit services . . . ."

45.     Since at least January 1, 2013, Indianapolis Municipal Code § 730-302 has provided "No permit shall be issued for any structure or use authorized by variance unless the use, character and location thereof shall be in conformity with all requirements and conditions of the variance."

46.     Since at least January 1, 2013, Indianapolis Municipal Code § 734-204(a) has provided, "No sign or sign structure, or part thereof, shall be constructed, erected, converted, enlarged, extended, reconstructed or relocated except in conformity with these regulations."

47.     Since at least January 1, 2013, Indianapolis Municipal Code § 734-501 has defined an "on-premises sign" as "a sign which directs attention to a business, profession,

commodity, or service offered on the property on which the sign is located" (hereafter, "On-Premises Sign").

48.    Since at least January 1, 2013, Indianapolis Municipal Code § 734-501 has defined an "off-premises sign" as "a sign which directs attention to a business, profession, commodity, or service offered on the property other than that on which the sign is located" (hereafter, "Off-Premises Sign").

49.    Since at least January 1, 2013, Indianapolis Municipal Code § 734-501 has defined an "advertising sign" as "any off-premises sign which directs attention to any business, profession, product, activity, commodity, or service that is offered, sold, or manufactured on property or premises other than that upon which the sign is located.  Also known as an outdoor advertising sign" (hereafter, "Advertising Sign").

50.    From at least January 1, 2013, until November 30, 2015,[3] Indianapolis Municipal Code § 734-501 had defined a "noncommercial opinion sign" as "a sign, which does not advertise products, goods, businesses, or services and which expresses an opinion or point of view, such as, a political, religious, or other ideological sentiment or support or opposition to a candidate or proposition for a public election.  A sign which meets the definition of an on-premise sign, an off-premise sign, and/or an advertising sign, shall not be considered a noncommercial opinion sign" (hereafter, "Noncommercial Opinion Sign").

51.    From at least January 1, 2013, until November 30, 2015,[4] Indianapolis Municipal Code § 734-201(o)(1) provided that Noncommercial Opinion Signs may be displayed as freestanding signs, with an area no greater than six square feet (6 sq ft), a height no greater than

---

[3]    (*See supra*, n.2).

[4]    (*See supra*, n.2).

four feet (4 ft), no more than five (5) signs per street frontage, and a setback preventing the signs from being in the public right-of-way or the clear sight triangular area.

52.     From at least January 1, 2013, until November 30, 2015,[5], Indianapolis Municipal Code § 734-201(o)(2) provided that Noncommercial Opinion Signs may be displayed as window signs regulated per the applicable zoning district provisions pertaining to window signs.

53.     From at least January 1, 2013, until November 30, 2015,[6], Indianapolis Municipal Code § 734-201(o)(3) provided that "[N]oncommercial opinion signs may be displayed on a sign face that has been legally established to display advertising signs, in the same manner and size as an advertising sign is permitted to be displayed on the same sign face."  Indianapolis Municipal Code § 734-201(o)(3), which was in effect when GEFT applied for sign permits for the GEFT East/West Signs, is hereinafter referred to as the "Noncommercial Exemption."

54.     The Sign Ordinance did not contain the language, "Any sign authorized in this ordinance is allowed to contain noncommercial copy in lieu of other copy."

55.     Since at least January 1, 2013, Indianapolis Municipal Code §§ 734-300 through 734-306 has provided specific development standards for signs based on whether the sign is an On-Premises Sign or Off-Premises Sign.  Indianapolis Municipal Code §§ 734-300 through 734-306 is hereinafter referred to as "Article III."

56.     Since at least January 1, 2013, Indianapolis Municipal Code § 734-306(a)(6) has provided that "No advertising sign shall be permitted which displays video or emitting graphics."  Indianapolis Municipal Code § 734-306(a)(6) is hereinafter referred to as the "Digital Ban."

---

[5]        (*See supra*, n.2).

[6]        (*See supra*, n.2).

57.     Since at least January 1, 2013, Indianapolis Municipal Code § 734-403(b)(4) has provided that "No [off-premises sign within six hundred sixty (660) feet of the right-of-way of freeways and expressways] shall be permitted which displays video or emitting graphics." Indianapolis Municipal Code § 734-403(b)(4) is hereinafter referred to as the "Highway Digital Ban."

58.     At all times relevant herein, the City has enforced the Digital and Highway Digital Bans to prevent Off-Premises Signs from displaying digital content.

### DIGITAL MESSAGES ON THE GEFT EAST/WEST SIGNS

59.     GEFT desires to display digital content on the GEFT East/West Signs, but it cannot do so without a variance from the Digital and Highway Digital Bans.

60.     On July 28, 2015, GEFT filed petition 2015-DV1-048 for a variance of development standards with the City, seeking permission to install an LED component and display digital content on the West Sign ("West Variance").

61.     On July 30, 2015, GEFT filed addendum T0000092298 with the Indiana Department of Transportation ("INDOT"), seeking permission to convert the static faces on the West Sign to digital faces ("Addendum 98").

62.     On August 7, 2015, INDOT approved Addendum 98.

63.     On September 17, 2015, a Planning employee informed GEFT that Planning intended to issue a staff report in opposition to the West Variance, recommending that the BZA deny the West Variance.

64.     GEFT contracted with Kenneth Gordon, a licensed electrical contractor with the City, to obtain an electrical permit to upgrade the electrical service to the West Sign in order to install an LED component on and display digital messages on the West Sign.

65.     On September 24, 2015, DCE issued electrical permit ELE15-04371 to Kenneth Gordon to upgrade the existing 100-amp electrical service at the West Property to 200 amps to provide electrical power to the West Sign.

66.     The West Variance was heard by BZA 1 on November 5, 2015.  BZA 1 denied the West Variance.

67.     On or about December 1, 2015, BZA 1 issued findings of fact to support its denial of the West Variance.

68.     According to the Sign Ordinance, GEFT cannot display digital content on the West Sign without violating the Digital and Highway Digital Bans, and facing civil penalties.

69.     Pursuant to Indianapolis Municipal Code §§ 103-3, 730-506, and 734-700; and Ind. Code § 36-1-3-8(1)(10)(B), GEFT faces a civil penalty of $2,500 for the first violation and a daily civil penalty of $7,500 for each subsequent violation of the Digital and Highway Digital Bans by displaying digital content on the West Sign.

70.     The City has deprived GEFT of its ability to fully use and benefit from its West Sign, for which GEFT reasonably believes it could have received up to $60,000 per month in revenue.

71.     On July 28, 2015, GEFT filed petition 2015-DV1-047 for a variance of development standards with the City, seeking permission to install an LED component and display digital content on the East Sign ("East Variance").

72.     On July 30, 2015, GEFT filed addendum T0000092299 with INDOT, seeking permission to convert the static faces on the East Sign to digital faces ("Addendum 99").

73.     On August 7, 2015, INDOT approved Addendum 99.

74.     On September 17, 2015, a Planning employee informed GEFT that Planning intended to issue a staff report in opposition to the East Variance, recommending that the BZA deny the East Variance.

75.     GEFT contracted with Kenneth Gordon to obtain an electrical permit to install electrical service to the East Sign in order to install an LED component on and display digital messages on the East Sign.

76.     On September 24, 2015, DCE issued electrical permit ELE15-04369 to Kenneth Gordon to install a new 200-amp electrical service at the East Property to provide electrical power to the East Sign.

77.     The East Variance was heard by BZA 1 on November 5, 2015.  BZA 1 denied the East Variance.

78.     On or about December 1, 2015, BZA 1 issued findings of fact to support its denial of the East Variance.

79.     According to the Sign Ordinance, GEFT cannot display digital content on the East Sign without violating the Digital and Highway Digital Bans, and facing civil penalties.

80.     Pursuant to Indianapolis Municipal Code §§ 103-3, 730-506, and 734-700; and Ind. Code § 36-1-3-8(1)(10)(B), GEFT faces a civil penalty of $2,500 for the first violation and a daily civil penalty of $7,500 for a second or subsequent violation of the Digital and Highway Digital Bans by displaying digital content on the East Sign.

81.     The City has deprived GEFT of its ability to fully use and benefit from its East Sign, for which GEFT reasonably believes it could have received up to $60,000 per month in revenue.

82.     GEFT now brings this action pursuant to 42 U.S.C. § 1983; the First and Fourteenth Amendments of the United States Constitution; Article I, §§ 9 and 23 of the Indiana Constitution; 28 U.S.C. § 2201; and Indiana Code 36-7-4-1601, *et al.* to (1) declare the Sign Ordinance, Digital Ban, and Highway Digital Ban facially unconstitutional, as well as unconstitutional as applied to GEFT; (2) enjoin the City from enforcing the Sign Ordinance, Digital Ban, and Highway Digital Ban against GEFT; (3) vacate BZA 1's denial of the West Variance and East Variance; and (4) recover damages for the unconstitutional deprivation of GEFT's free speech rights.

## THE CITY AMENDS ITS SIGN ORDINANCE

83.     On or about October 5, 2015, GEFT filed this lawsuit.

84.     On or about October 5, 2015, GEFT filed a motion for preliminary injunction, asking the Court to enjoin the City from enforcing the Sign Ordinance against GEFT to (1) prevent GEFT from displaying digital messages on the GEFT East/West Signs; and (2) require GEFT to obtain variances before being permitted to display digital messages on the GEFT East/West Signs.

85.     On or about October 16, 2015, GEFT filed a motion for temporary restraining order, asking the Court to enjoin the City from enforcing the Sign Ordinance against GEFT to (1) prevent GEFT from displaying digital messages on the GEFT East/West Signs; and (2) require GEFT to obtain variances before being permitted to display digital messages on the GEFT East/West Signs.

86.     On or about November 4, 2015, the Court granted in part and denied in part GEFT's motion for temporary restraining order, finding that the Noncommercial Exemption is

likely unconstitutional, and temporarily enjoining the City from prohibiting GEFT from displaying noncommercial speech on any sign authorized to display commercial speech.

87.     On or about November 30, 2015, the City passed General Ordinance 71, 2015, amending the Sign Ordinance, intending to bring it into compliance with *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), and the Court's order granting in part and denying in part GEFT's motion for temporary restraining order.

88.     Since November 30, 2015, Indianapolis Municipal Code § 734-101(b) has provided that "Noncommercial messages may be displayed on any sign authorized to display commercial messages."  Indianapolis Municipal Code § 734-101(b), which is currently in effect, is hereinafter referred to as the "Amended Noncommercial Exemption."

89.     The Amended Sign Ordinance does not contain the Noncommercial Exemption that was contained in the Sign Ordinance.

90.     The Amended Sign Ordinance does not contain a definition of, or development standards for, Noncommercial Opinion Signs.

91.     The Amended Sign Ordinance replaced the development standards for Noncommercial Opinion Signs with Indianapolis Municipal Code § 734-201(p), which provides "***Yard signs.***  An ILP shall not be required if all standards are satisfied."

92.     Since November 30, 2015, Indianapolis Municipal Code § 734-501 has defined a "yard sign" as a "freestanding sign accessory to the primary use of land that is located in the yard of a lot; may be permanent, or temporary; and may be either an on-premises or off-premises sign" (hereinafter, "Yard Sign").

93.     Since November 30, 2015, Indianapolis Municipal Code § 734-301(c)(4) has provided that (a) the "maximum height of a yard sign shall not exceed 4 feet"; (b) the "maximum

sign surface area of a yard sign shall not exceed 4 square feet"; (c) "yard signs shall not be located in any right-of-way"; and (d) "yard signs shall not be illuminated."

94.     The Amended Sign Ordinance does not contain the language, "Any sign authorized in this ordinance is allowed to contain noncommercial copy in lieu of other copy."

95.     Since November 30, 2015, Indianapolis Municipal Code § 734-501 has provided, in its definition of On-Premises Sign, that "This limitation does not apply to the content of noncommercial messages."

96.     Since November 30, 2015, Indianapolis Municipal Code § 734-501 has provided, in its definition of Off-Premises Sign, that "This limitation does not apply to the content of noncommercial messages."

97.     Since November 30, 2015, Indianapolis Municipal Code § 734-501 has provided. in its definition of Advertising Sign. that "This limitation does not apply to the content of noncommercial messages."

98.     The Amended Sign Ordinance maintains Article III, which provides the specific development standards for signs based on whether the sign is an On-Premises Sign or Off-Premises Sign.

99.     The Amended Sign Ordinance maintains the Digital Ban.

100.     The Amended Sign Ordinance maintains the Highway Digital Ban.

101.     The City contends that the Amended Sign Ordinance renders some of GEFT's claims moot.

## FIRST CAUSE OF ACTION

### THE SIGN ORDINANCE VIOLATES THE FREE SPEECH CLAUSES OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 9 OF THE INDIANA CONSTITUTION

102.    GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

103.    The First Amendment of the United States Constitution, as applied to the States and their political subdivisions through the Fourteenth Amendment of the United States Constitution, protects a citizen from being punished by a governmental entity or individual acting in his or her official capacity as an agent of that governmental entity, because of said citizen's exercise of free speech.  GEFT possesses those rights.

104.    Article I, § 9 of the Indiana Constitution guarantees Indiana citizens the same rights guaranteed by the First Amendment to the United States Constitution.  GEFT possesses those rights.

105.    The Sign Ordinance, as amended, which became effective January 23, 1995, has established unconstitutional content-based restrictions on speech.  For example, Article III provides specific development standards for signs based on whether the sign is an On-Premises Sign or Off-Premises Sign; an On-Premises Sign may be permitted at a certain location provided it adheres to applicable development standards, but an Off-Premises Sign is prohibited at the same location, even if it conforms to the same development standards.  The Sign Ordinance also requires the City to examine the proposed content of the sign to determine the applicable development standards.

106.    Article III is unconstitutional on its face, and as applied to GEFT, because the City has failed to, and cannot, articulate a compelling and/or substantial governmental interest in

providing development standards for On-Premises Signs distinct from the development standards for Off-Premises Signs.

107.    Article III is unconstitutional on its face, and as applied to GEFT, because the City has failed to, and cannot, narrowly draw restrictions based on distinctions between On-Premises Signs and Off-Premises Signs in a manner to directly advance any purported governmental interest.

108.    Because Article III provides the core regulations of the Sign Ordinance, a determination of unconstitutionality as to Article III renders the Sign Ordinance unconstitutional.

109.    The Sign Ordinance is also unconstitutional on its face because it impermissibly favors commercial speech over noncommercial speech.  For example, the Noncommercial Exemption allows Noncommercial Opinion Signs to be displayed on legally-established Advertising Signs (defined as Off-Premises Signs), and the Digital Ban prohibits Off-Premises Signs from displaying digital content; Noncommercial Opinion Signs may not be displayed as digital content, but commercial On-Premises Signs may display digital content.

110.    The Noncommercial Exemption unconstitutionally regulates speech by impermissibly and without sufficient justification favoring commercial speech over protected noncommercial speech by limiting the display of Noncommercial Opinion Signs to Off-Premises Signs, or to small freestanding signs or window signs.

111.    Except under the Noncommercial Exemption, Noncommercial Opinion Signs may only be displayed as small freestanding signs or window signs.

112.    Because the Noncommercial Exemption provides the only widespread protection for noncommercial speech in the Sign Ordinance, a determination of unconstitutionality as to the Noncommercial Exemption renders the Sign Ordinance unconstitutional.

113.    GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying off-premises signs and noncommercial opinion signs on the South Sign, which GEFT reasonably believes could result in up to $15,000 per month in revenue to GEFT.

114.    GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying digital content on the GEFT East/West Signs, which GEFT reasonably believes could have resulted in up to $120,000 per month in revenue to GEFT.

115.    Based on the foregoing, GEFT seeks (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Sign Ordinance unconstitutional on its face; (ii) a permanent injunction enjoining the Defendant from enforcing the Sign Ordinance against GEFT; and (iii) compensatory damages, pursuant to 42 U.S.C. § 1983, in a sum to be determined at trial.

## SECOND CAUSE OF ACTION

### THE AMENDED SIGN ORDINANCE DOES NOT GOVERN THE GRANTING OF ANY PERMITS OR APPROVALS NECESSARY FOR GEFT TO DISPLAY DIGITAL MESSAGES ON THE GEFT EAST/WEST SIGNS

116.    GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

117.    On or about February 10, 2015, GEFT applied for the West Permit.

118.    Within three (3) years of applying for the West Permit, on or about July 28, 2015, GEFT applied for the West Variance.

119.    The West Variance concerns the same general subject matter as the West Permit: the display of commercial and noncommercial messages on the West Sign.

120.    On or about March 10, 2015, GEFT applied for the East Permit.

121.     Within three (3) years of applying for the East Permit, on or about July 28, 2015, GEFT applied for the East Variance.

122.     The East Variance concerns the same general subject matter as the East Permit: the display of commercial and noncommercial messages on the East Sign.

123.     On or about November 30, 2015, the City enacted the Amended Sign Ordinance.

124.     Indiana Code § 36-7-4-1109(c) provides:

> [I]f a person files a complete application as required by the effective ordinances or rules of a local governmental agency for a permit with the appropriate local governmental agency, the granting of the permit, and the granting of any secondary, additional, or related permits or approvals required from the same local governmental agency with respect to the general subject matter of the application for the first permit, are governed for at least three (3) years after the person applies for the permit by the statutes, ordinances, rules, development standards, and regulations in effect and applicable to the property when the application is filed, even if before the issuance of the permit or while the permit approval process is pending, or before the issuance of any secondary, additional, or related permits or approvals or while the secondary, additional, or related permit or approval process is pending, the statutes, ordinances, rules, development standards, or regulations governing the granting of the permit or approval are changed by the general assembly or the applicable local legislative body or regulatory body.

125.     Based on the foregoing, GEFT seeks (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that the Amended Sign Ordinance does not govern the granting of any secondary, additional, or related permits or approvals with respect to the general subject matter of the application for the West Permit, including any permit or approval necessary for GEFT to display digital messages on the West Sign, until February 10, 2018, and (ii) a permanent injunction enjoining the Defendant from enforcing the Amended Sign Ordinance against GEFT with respect to the West Sign until February 10, 2018, at the earliest.

126.    Based on the foregoing, GEFT seeks (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that the Amended Sign Ordinance does not govern the granting of any secondary, additional, or related permits or approvals with respect to the general subject matter of the application for the East Permit, including any permit or approval necessary for GEFT to display digital messages on the East Sign, until March 10, 2018, and (ii) a permanent injunction enjoining the Defendant from enforcing the Amended Sign Ordinance against GEFT with respect to the East Sign until March 10, 2018, at the earliest.

### THIRD CAUSE OF ACTION

### THE AMENDED SIGN ORDINANCE VIOLATES THE FREE SPEECH CLAUSES OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 9 OF THE INDIANA CONSTITUTION

127.    GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

128.    The First Amendment of the United States Constitution, as applied to the States and their political subdivisions through the Fourteenth Amendment of the United States Constitution, protects a citizen from being punished by a governmental entity or individual acting in his or her official capacity as an agent of that governmental entity, because of said citizen's exercise of free speech.  GEFT possesses those rights.

129.    Article I, § 9 of the Indiana Constitution guarantees Indiana citizens the same rights guaranteed by the First Amendment to the United States Constitution.  GEFT possesses those rights.

130.    To the extent the Amended Sign Ordinance applies to this lawsuit, the Amended Sign Ordinance, which became effective November 30, 2015, has established unconstitutional content-based restrictions on speech.  For example, Article III provides specific development standards for signs based on whether the sign is an On-Premises Sign or Off-Premises Sign; an

On-Premises Sign may be permitted at a certain location provided it adheres to applicable development standards, but an Off-Premises Sign is prohibited at the same location, even if it conforms to the same development standards. The Sign Ordinance also requires the City to examine the proposed content of the sign to determine the applicable development standards.

131.    Article III is unconstitutional on its face, and as applied to GEFT, because the City has failed to, and cannot, articulate a compelling and/or substantial governmental interest in providing development standards for On-Premises Signs distinct from the development standards for Off-Premises Signs.

132.    Article III is unconstitutional on its face, and as applied to GEFT, because the City has failed to, and cannot, narrowly draw restrictions based on distinctions between On-Premises Signs and Off-Premises Signs in a manner to directly advance any purported governmental interest.

133.    Because Article III provides the core regulations of the Sign Ordinance, a determination of unconstitutionality as to Article III renders the Sign Ordinance unconstitutional.

134.    The Amended Sign Ordinance is also unconstitutional on its face because it impermissibly favors commercial speech over noncommercial speech. For example, the Amended Sign Ordinance allows permanent noncommercial messages to be displayed on any sign authorized to display commercial messages or as a Yard Sign, but does not permit the erection, operation, and maintenance of a sign with dimensions authorized for commercial signs to display only noncommercial messages from the outset. To utilize the Amended Noncommercial Exemption, a sign must have already been erected to display commercial messages.

135.    The Amended Noncommercial Exemption unconstitutionally regulates speech by impermissibly and without sufficient justification favoring commercial speech over protected noncommercial speech by limiting the display of noncommercial messages to signs already erected to display commercial messages, or to Yard Signs.

136.    Because the Amended Noncommercial Exemption provides the only widespread protection for noncommercial speech in the Amended Sign Ordinance, a determination of unconstitutionality as to the Amended Noncommercial Exemption renders the Amended Sign Ordinance unconstitutional.

137.    GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying off-premises signs and noncommercial opinion signs on the South Sign, which GEFT reasonably believes could result in up to $15,000 per month in revenue to GEFT.

138.    GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying digital content on the GEFT East/West Signs, which GEFT reasonably believes could have resulted in up to $120,000 per month in revenue to GEFT.

139.    Based on the foregoing, GEFT seeks (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Amended Sign Ordinance unconstitutional on its face; (ii) a permanent injunction enjoining the Defendant from enforcing the Amended Sign Ordinance against GEFT; and (iii) compensatory damages, pursuant to 42 U.S.C. § 1983, in a sum to be determined at trial.

## FOURTH CAUSE OF ACTION

### THE DIGITAL BAN VIOLATES THE FREE SPEECH CLAUSES OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 9 OF THE INDIANA CONSTITUTION

140.    GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

141.    The First Amendment of the United States Constitution, as applied to the States and their political subdivisions through the Fourteenth Amendment of the United States Constitution, protects a citizen from being punished by a governmental entity or individual acting in his or her official capacity as an agent of that governmental entity, because of said citizen's exercise of free speech.

142.    Article I, § 9 of the Indiana Constitution guarantees Indiana citizens the same rights guaranteed by the First Amendment to the United States Constitution.

143.    GEFT's use of the GEFT East/West Signs for advertising purposes is lawful and not misleading and, therefore, constitutes commercial and/or noncommercial speech which is protected from unwarranted governmental regulation by the First Amendment of the United States Constitution, as made applicable to the City through the Fourteenth Amendment of the United States Constitution, and by Article I, § 9 of the Indiana Constitution.

144.    The Digital Ban, which became effective November 17, 2003, and remains in the Amended Sign Ordinance, has established an unconstitutional content-based regulation on speech.

145.    The Digital Ban is an impermissible infringement and abridgment of GEFT's right to free speech under the First and Fourteenth Amendment of the Unites States Constitution, and Article I, § 9 of the Indiana Constitution.

146.    The Digital Ban is facially invalid, as well as invalid as applied to GEFT because the City has prohibited the display of digital content on Off-Premises Signs and Noncommercial Opinion Signs.

147.    The Digital Ban is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, articulate a compelling and/or substantial governmental interest in prohibiting the display of digital content on Off-Premises Signs and Noncommercial Opinion Signs while permitting the display of digital content on On-Premises Signs.

148.    The Digital Ban is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, narrowly draw restrictions on the display of digital content in a manner to directly advance any purported governmental interest.

149.    GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying digital content on the GEFT East/West Signs, which GEFT reasonably believes could have resulted in up to $120,000 per month in revenue to GEFT.

150.    Based on the foregoing, GEFT seeks (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Digital Ban unconstitutional on its face and as applied to GEFT; (ii) a permanent injunction enjoining the City from enforcing the Digital Ban against GEFT; and (iii) compensatory damages, pursuant to 42 U.S.C. § 1983, in a sum to be determined at trial.

## FIFTH CAUSE OF ACTION

### THE HIGHWAY DIGITAL BAN VIOLATES THE FREE SPEECH CLAUSES OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 9 OF THE INDIANA CONSTITUTION

151.    GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

152. The First Amendment of the United States Constitution, as applied to the States and their political subdivisions through the Fourteenth Amendment of the United States Constitution, protects a citizen from being improperly punished by a governmental entity or individual acting in his or her official capacity as an agent of that governmental entity, because of said citizen's exercise of free speech.

153. Article I, § 9 of the Indiana Constitution guarantees Indiana citizens the same rights guaranteed by the First Amendment to the United States Constitution.

154. GEFT's use of the GEFT East/West Signs for advertising purposes is lawful and not misleading and, therefore, constitutes commercial and/or noncommercial speech which is protected from unwarranted governmental regulation by the First Amendment of the United States Constitution, as made applicable to the City through the Fourteenth Amendment of the United States Constitution, and by Article I, § 9 of the Indiana Constitution.

155. The Highway Digital Ban, which became effective November 17, 2003, and remains in the Amended Sign Ordinance, has established an unconstitutional content-based regulation on speech.

156. The Highway Digital Ban is an impermissible infringement and abridgment of GEFT's right to free speech under the First and Fourteenth Amendment of the Unites States Constitution, and Article I, § 9 of the Indiana Constitution.

157. The Highway Digital Ban is facially invalid, as well as invalid as applied to GEFT because the City has prohibited the display of digital content on Off-Premises Signs and Noncommercial Opinion Signs, which are within six hundred sixty (660) feet of the right-of-way of freeways and expressways.

158.    The Highway Digital Ban is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, articulate a compelling and/or substantial governmental interest in prohibiting the display of digital content on Off-Premises Signs and Noncommercial Signs, which are within six hundred sixty (660) feet of the right-of-way of freeways and expressways, while permitting the display of digital content on On-Premises Signs, which are within six hundred sixty (660) feet of the right-of-way of freeways and expressways.

159.    The Highway Digital Ban is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, narrowly draw restrictions upon the display of digital content within six hundred sixty (660) feet of the right-of-way of freeways and expressways in a manner to directly advance any purported governmental interest.

160.    GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying digital content on the GEFT East/West Signs, which GEFT reasonably believes could have resulted in up to $120,000 per month in revenue to GEFT.

161.    Based on the foregoing, GEFT seeks (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Highway Digital Ban unconstitutional on its face and as applied to GEFT; (ii) a permanent injunction enjoining the City from enforcing the Highway Digital Ban against GEFT; and (iii) compensatory damages, pursuant to 42 U.S.C. § 1983, in a sum to be determined at trial.

## SIXTH CAUSE OF ACTION

### THE SIGN ORDINANCE VIOLATES THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 23 OF THE INDIANA CONSTITUTION

162.    GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

163.    The Fourteenth Amendment of the United States Constitution protects citizens, who are similarly situated, from differential treatment by a governmental regulation that affects the exercise of rights protected under the First Amendment.

164.    Article I, § 23 of the Indiana Constitution guarantees Indiana citizens the same rights guaranteed by the Fourteenth Amendment to the United States Constitution.

165.    Article III allows individuals similarly situated to owners of Off-Premises Signs, like GEFT, to display signs under different development standards, including but not limited to different allowable types of signs, size restrictions, height restrictions, setback restrictions, and digital restrictions.

166.    Article III allows individuals similarly situated to owners of On-Premises Signs, like GEFT, to display off-premises signs and noncommercial opinion signs while owners of On-Premises Signs are prohibited from doing so.

167.    Article III is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, articulate a legitimate governmental interest rationally related to the different development standards for On-Premises Signs and Off-Premises Signs.

168.    Article III is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, articulate a compelling governmental interest in providing different development standards for On-Premises Signs and Off-Premises Signs, or how different development standards for On-Premises Signs and Off-Premises Signs is the most narrowly tailored regulation to serve any such interest.

169.    The Amended Sign Ordinance maintains Article III, which provides the specific development standards for signs based on whether the sign is an On-Premises Sign or Off-Premises Sign.

170.    Because Article III provides the core regulations of the Sign Ordinance and Amended Sign Ordinance, a determination of unconstitutionality as to Article III renders the Sign Ordinance and Amended Sign Ordinance unconstitutional.

171.    GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying off-premises signs and noncommercial opinion signs on the South Sign, which GEFT reasonably believes could result in up to $15,000 per month in revenue to GEFT.

172.    GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying digital content on the GEFT East/West Signs, which GEFT reasonably believes could have resulted in up to $120,000 per month in revenue to GEFT.

173.    Based on the foregoing, GEFT seeks (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Sign Ordinance and Amended Sign Ordinance unconstitutional on its face; (ii) a permanent injunction enjoining the City from enforcing the Sign Ordinance and Amended Sign Ordinance against GEFT; and (iii) compensatory damages, pursuant to 42 U.S.C. § 1983, in a sum to be determined at trial.

## SEVENTH CAUSE OF ACTION

### THE DIGITAL BAN VIOLATES THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 23 OF THE INDIANA CONSTITUTION

174.    GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

175.    The Fourteenth Amendment of the United States Constitution protects citizens, who are similarly situated, from differential treatment by a governmental regulation that affects the exercise of rights protected under the First Amendment.

176.    Article I, § 23 of the Indiana Constitution guarantees Indiana citizens the same rights guaranteed by the Fourteenth Amendment to the United States Constitution.

177.    The Digital Ban allows individuals similarly situated to owners of Off-Premises Signs, like GEFT, to display digital content on signs.

178.    The Digital Ban is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, articulate a legitimate governmental interest rationally related to prohibiting the display of digital content on Off-Premises Signs while permitting the display of digital content on On-Premises Signs.

179.    The Digital Ban is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, articulate a compelling governmental interest in prohibiting the display of digital content on Off-Premises Signs while permitting the display of digital content on On-Premises Signs, or how such a regulation is the most narrowly tailored regulation to serve any such interest.

180.    GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying digital content on the GEFT East/West Signs, which GEFT reasonably believes could have resulted in up to $120,000 per month in revenue to GEFT.

181.    Based on the foregoing, Plaintiff seeks (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Digital Ban unconstitutional on its face and as applied to Plaintiff; (ii) a permanent injunction enjoining the Defendant from enforcing the Digital Ban against Plaintiff; and (iii) compensatory damages, pursuant to 42 U.S.C. § 1983, in a sum to be determined at trial.

## EIGHTH CAUSE OF ACTION

### THE HIGHWAY DIGITAL BAN VIOLATES THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 23 OF THE INDIANA CONSTITUTION

182.   GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

183.   The Fourteenth Amendment of the United States Constitution protects citizens, who are similarly situated, from differential treatment by a governmental regulation that affects the exercise of rights protected under the First Amendment.

184.   Article I, § 23 of the Indiana Constitution guarantees Indiana citizens the same rights guaranteed by the Fourteenth Amendment to the United States Constitution.

185.   The Highway Digital Ban allows individuals similarly situated to owners of Off-Premises Signs, like GEFT, to display digital content on signs within six hundred sixty (660) feet of the right-of-way of freeways and expressways.

186.   The Highway Digital Ban is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, articulate a legitimate governmental interest rationally related to prohibiting Off-Premises Signs within six hundred sixty (660) feet of the right-of-way of freeways and expressways from displaying digital content while permitting On-Premises Signs within six hundred sixty (660) feet of the right-of-way of freeways and expressways to display digital content.

187.   The Highway Digital Ban is unconstitutional on its face and as applied to GEFT because the City has failed to, and cannot, articulate a compelling governmental interest in prohibiting Off-Premises Signs within six hundred sixty (660) feet of the right-of-way of freeways and expressways from displaying digital content while permitting On-Premises Signs within six hundred sixty (660) feet of the right-of-way of freeways and expressways to display

digital content, or how such a regulation is the most narrowly tailored regulation to serve any such interest.

188.    GEFT has been damaged by the City's abridgement of its constitutional rights because GEFT has been restricted from displaying digital content on the GEFT East/West Signs, which GEFT reasonably believes could have resulted in up to $120,000 per month in revenue to GEFT.

189.    Based on the foregoing, Plaintiff seeks (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Highway Digital Ban unconstitutional on its face and as applied to Plaintiff; (ii) a permanent injunction enjoining the Defendant from enforcing the Highway Digital Ban against Plaintiff; and (iii) compensatory damages, pursuant to 42 U.S.C. § 1983, in a sum to be determined at trial.

## NINTH CAUSE OF ACTION

### A REQUIREMENT THAT GEFT OBTAIN VARIANCES TO THE DIGITAL AND HIGHWAY DIGITAL BANS FAILS INDIANA'S ASCERTAINABLE STANDARDS RULE

190.    GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

191.    Except for the unconstitutional Sign Ordinance, and the unconstitutional Amended Sign Ordinance to the extent it applies in this case, no provision in the Indianapolis Municipal Code regulates GEFT's display of digital content on the GEFT East/West Signs.

192.    The City has no constitutionally-permissible, ascertainable standards by which to consider GEFT's variance petitions to install LED components and display digital content on the GEFT East/West Signs.

193.    Based on the foregoing, Plaintiff seeks injunctive relief, preventing the City from requiring GEFT to obtain variances to install LED components and display digital messages on

the GEFT East/West Signs, and to the extent the City may require said variances, requiring the City to grant said variances; or alternatively preventing the City from denying and/or delaying disposition of said variances.

## TENTH CAUSE OF ACTION

### A REQUIREMENT THAT GEFT OBTAIN IMPROVEMENT LOCATION PERMITS, OR OTHER RELATED APPROVALS, FAILS INDIANA'S ASCERTAINABLE STANDARDS RULE

194.   GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

195.   Except for the unconstitutional Sign Ordinance, and the unconstitutional Amended Sign Ordinance to the extent it applies in this case, no provision in the Indianapolis Municipal Code regulates GEFT's display of digital content on the GEFT East/West Signs.

196.   The City has no constitutionally-permissible, ascertainable standards by which to consider GEFT's request for a permit update/amendment to install LED components on the GEFT East/West Signs and display digital content on the GEFT East/West Signs.

197.   Based on the foregoing, Plaintiff seeks injunctive relief, preventing the City from requiring GEFT to obtain improvement location permits, or other related approvals, to display digital messages on the Signs, and to the extent the City may require said improvement location permits, or other related approvals, requiring the City to grant said improvement location permits, or other related approvals; or alternatively preventing the City from denying and/or delaying disposition of said improvement locations permits, or other related approvals.

## ELEVENTH CAUSE OF ACTION

### VERIFIED PETITION FOR JUDICIAL REVIEW OF BZA 1'S DENIAL OF THE WEST VARIANCE

198.   GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

199.    The name and mailing address of the petitioner for the West Variance is:

GEFT Outdoor, L.L.C.
9425 North Meridian Street, #226
Indianapolis, IN  46260

200.    The name and mailing address of BZA 1 is:

Metropolitan Board of Zoning Appeals, Division 1
Current Planning Division
Division of Planning
Department of Metropolitan Development
City-County Building
200 East Washington Street, Room 1842
Indianapolis, IN  46204

201.    On November 5, 2015, BZA 1 denied the West Variance, which sought to convert the West Sign from a static sign to a digital sign in contravention of the current, unconstitutional Sign Ordinance.  GEFT seeks judicial review of this denial.

202.    The following individuals participated in BZA 1's hearing of the West Variance: Pat Andrews, Norman Pace, Gary Chalupo, Ed Locke, and City-County Councilperson Jeff Miller.

203.    BZA 1's denial of the West Variance was specifically directed at GEFT as petitioner of the West Variance.

204.    No administrative remedies exist for a petitioner of a variance that is denied. GEFT has exhausted all available administrative remedies.

205.    GEFT filed this verified petition for judicial review on or before December 5, 2015, which is thirty (30) days after the denial of the West Variance.

206.    GEFT has transmitted to the Court the original or a certified copy of BZA 1's record of its denial of the West Variance within thirty (30) days after filing this petition, or within further time allowed by the Court.

207.   GEFT has been prejudiced by BZA 1's denial of the West Variance because GEFT cannot display digital content on the West Sign without risk of fine.

208.   BZA 1's denial of the West Variance is contrary to constitutional right, power, privilege, or immunity.   The standards under which BZA 1 considered the West Variance are unconstitutional (*see supra*).   Additionally, GEFT had insufficient notice of the testimony offered by a Planning employee at the November 5, 2015 hearing beyond the Staff Report; certain testimony was not included in the Staff Report published five (5) days prior to the hearing and was first offered during the hearing after GEFT's presentation of evidence, statements, and arguments in support of the West Variance.

209.   BZA 1's denial of the West Variance is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.   Without the unconstitutional provisions of the Sign Ordinance, BZA 1 has no ascertainable standards by which to adjudicate the West Variance (*see supra*).

210.   BZA 1's denial of the West Variance is without observance of procedure required by law.   BZA 1 filed a copy of its decision, including findings of fact, in the BZA office twenty-six (26) days after denying the West Variance, in contravention of Indiana Code § 36-7-4-919(f) and the BZA's Rules of Procedure, Art. II, § 4, adopted pursuant to Indiana Code § 36-7-4-916.

211.   Based on the foregoing, Plaintiff seeks (i) vacation of BZA 1's denial of the West Variance; (ii) a declaration that GEFT need not seek a variance to display digital content on the West Sign; and (iii) a permanent injunction prohibiting the City from requiring GEFT to obtain a variance before displaying digital content on the West Sign.

## TWELFTH CAUSE OF ACTION

### VERIFIED PETITION FOR JUDICIAL REVIEW OF BZA 1'S DENIAL OF THE EAST VARIANCE

212.    GEFT incorporates by reference the foregoing paragraphs, as if restated herein in their entirety.

213.    The name and mailing address of the petitioner for the East Variance is:

GEFT Outdoor, L.L.C.
9425 North Meridian Street, #226
Indianapolis, IN  46260

214.    The name and mailing address of BZA 1 is:

Metropolitan Board of Zoning Appeals, Division 1
Current Planning Division
Division of Planning
Department of Metropolitan Development
City-County Building
200 East Washington Street, Room 1842
Indianapolis, IN  46204

215.    On November 5, 2015, BZA 1 denied the East Variance, which sought to convert the East Sign from a static sign to a digital sign in contravention of the current, unconstitutional Sign Ordinance.  GEFT seeks judicial review of this denial.

216.    The following individuals participated in BZA 1's hearing of the East Variance: Pat Andrews, Gary Chalupo, Ed Locke, and City-County Councilperson Jeff Miller.

217.    BZA 1's denial of the East Variance was specifically directed at GEFT as petitioner of the East Variance.

218.    No administrative remedies exist for a petitioner of a variance that is denied. GEFT has exhausted all available administrative remedies.

219.    GEFT filed this verified petition for judicial review on or before December 5, 2015, which is thirty (30) days after the denial of the East Variance.

220.    GEFT has transmitted to the Court the original or a certified copy of BZA 1's record of its denial of the East Variance within thirty (30) days after filing this petition, or within further time allowed by the Court.

221.    GEFT has been prejudiced by BZA 1's denial of the East Variance because GEFT cannot display digital content on the East Sign without risk of fine.

222.    BZA 1's denial of the East Variance is contrary to constitutional right, power, privilege, or immunity.  The standards under which BZA 1 considered the East Variance are unconstitutional (*see supra*).   Additionally, GEFT had insufficient notice of the testimony offered by a Planning employee at the November 5, 2015 hearing beyond the Staff Report; certain testimony was not included in the Staff Report published five (5) days prior to the hearing and was first offered during the hearing after GEFT's presentation of evidence, statements, and arguments in support of the East Variance.

223.    BZA 1's denial of the East Variance is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  Without the unconstitutional provisions of the Sign Ordinance, BZA 1 has no ascertainable standards by which to adjudicate the East Variance (*see supra*).

224.    BZA 1's denial of the East Variance is without observance of procedure required by law.  BZA 1 filed a copy of its decision, including findings of fact, in the BZA office twenty-six (26) days after denying the East Variance, in contravention of Indiana Code § 36-7-4-919(f) and the BZA's Rules of Procedure, Art. II, § 4, adopted pursuant to Indiana Code § 36-7-4-916.

225.    Based on the foregoing, Plaintiff seeks (i) vacation of BZA 1's denial of the East Variance; (ii) a declaration that GEFT need not seek a variance to display digital content on the

East Sign; and (iii) a permanent injunction prohibiting the City from requiring GEFT to obtain a variance before displaying digital content on the East Sign.

## **DEMAND/PRAYER FOR RELIEF**

WHEREFORE, Plaintiff GEFT OUTDOOR, L.L.C., by counsel, respectfully requests a Judgment for the following relief:

A.     On the First Cause of Action, for an Order and Judgment that includes (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Sign Ordinance to be unconstitutional on its face and as applied to Plaintiff; (ii) a permanent injunction enjoining the Defendant from enforcing the Sign Ordinance against Plaintiff in its operation of its Signs, including but not limited to any enforcement actions or imposition of civil penalties against Plaintiff for installing LED components and displaying digital messages on the GEFT East/West Signs or for displaying on-premises and off-premises commercial messages, and/or noncommercial speech on any of the GEFT Signs; and (iii) an award of compensatory damages, pursuant to 42 U.S.C. § 1983, to be determined at trial;

B.     On the Second Cause of Action, for an Order and Judgment that includes (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Amended Sign Ordinance does not govern the granting of any secondary, additional, or related permits or approvals with respect to the general subject matter of the application for the West Permit, including any permit or approval necessary for GEFT to display digital messages on the West Sign, until February 10, 2018; (ii) a permanent injunction enjoining the Defendant from enforcing the Amended Sign Ordinance against GEFT with respect to the West Sign until February 10, 2018, at

the earliest; (iii) a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Amended Sign Ordinance does not govern the granting of any secondary, additional, or related permits or approvals with respect to the general subject matter of the application for the East Permit, including any permit or approval necessary for GEFT to display digital messages on the East Sign, until March 10, 2018; and (iv) a permanent injunction enjoining the Defendant from enforcing the Amended Sign Ordinance against GEFT with respect to the East Sign until March 10, 2018, at the earliest.

C.      On the Third Cause of Action, to the extent the Amended Sign Ordinance applies in this case, for an Order and Judgment that includes (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Amended Sign Ordinance to be unconstitutional on its face and as applied to Plaintiff; (ii) a permanent injunction enjoining the Defendant from enforcing the Amended Sign Ordinance against Plaintiff in its operation of its Signs, including but not limited to any enforcement actions or imposition of civil penalties against Plaintiff for installing LED components and displaying digital messages on the GEFT East/West Signs or for displaying on-premises and off-premises commercial messages, and/or noncommercial speech on any of the GEFT Signs; and (iii) an award of compensatory damages, pursuant to 42 U.S.C. § 1983, to be determined at trial;

D.      On the Fourth Cause of Action, for an Order and Judgment that includes (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Digital Ban to be unconstitutional on its face and as applied to Plaintiff; (ii) a permanent injunction enjoining the Defendant from enforcing the Digital Ban against Plaintiff in its

operation of its Signs, including but not limited to any enforcement actions or imposition of civil penalties against Plaintiff for installing LED components and displaying digital messages on the GEFT East/West Signs; and (iii) an award of compensatory damages, pursuant to 42 U.S.C. § 1983, to be determined at trial;

E.   On the Fifth Cause of Action, for an Order and Judgment that includes (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Highway Digital Ban to be unconstitutional on its face and as applied to Plaintiff; (ii) a permanent injunction enjoining the Defendant from enforcing the Highway Digital Ban against Plaintiff in its operation of its Signs, including but not limited to any enforcement actions or imposition of civil penalties against Plaintiff for installing LED components and displaying digital messages on the GEFT East/West Signs; and (iii) an award of compensatory damages, pursuant to 42 U.S.C. § 1983, to be determined at trial;

F.   On the Sixth Cause of Action, for an Order and Judgment that includes (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Sign Ordinance, and the Amended Sign Ordinance to the extent it applies in this case, to be unconstitutional on its face and as applied to Plaintiff; (ii) a permanent injunction enjoining the Defendant from enforcing the Sign Ordinance, and the Amended Sign Ordinance to the extent it applies in this case, against Plaintiff in its operation of its Signs, including but not limited to any enforcement actions or imposition of civil penalties against Plaintiff for installing LED components and displaying digital messages on the GEFT East/West Signs or for displaying on-premises and off-premises commercial messages, and/or noncommercial speech

on any of the GEFT Signs; and (iii) an award of compensatory damages, pursuant to 42 U.S.C. § 1983, to be determined at trial;

G.     On the Seventh Cause of Action, for an Order and Judgment that includes (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Digital Ban to be unconstitutional on its face and as applied to Plaintiff; (ii) a permanent injunction enjoining the Defendant from enforcing the Digital Ban against Plaintiff in its operation of its Signs, including but not limited to any enforcement actions or imposition of civil penalties against Plaintiff for installing LED components and displaying digital messages on the GEFT East/West Signs; and (iii) an award of compensatory damages, pursuant to 42 U.S.C. § 1983, to be determined at trial;

H.     On the Eighth Cause of Action, for an Order and Judgment that includes (i) a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the Highway Digital Ban to be unconstitutional on its face and as applied to Plaintiff; (ii) a permanent injunction enjoining the Defendant from enforcing the Highway Digital Ban against Plaintiff in its operation of its Signs, including but not limited to any enforcement actions or imposition of civil penalties against Plaintiff for installing LED components and displaying digital messages on the GEFT East/West Signs; and (iii) an award of compensatory damages, pursuant to 42 U.S.C. § 1983, to be determined at trial;

I.      On the Ninth Cause of Action, for an Order preventing the Defendant from requiring Plaintiff, now or at any time in the future under any amended Sign Ordinance, including the Amended Sign Ordinance, to obtain variances to install LED components and display digital messages on the GEFT East/West Signs, and

to the extent the Defendant may require said variances, requiring the Defendant to support said variances; or alternatively preventing the Defendant from opposing and/or delaying disposition of said variances;

J.      On the Tenth Cause of Action, for an Order preventing the Defendant from requiring Plaintiff, now or at any time in the future under any amended Sign Ordinance, including the Amended Sign Ordinance, to obtain improvement location permits, or other related approvals, to install LED components and display digital messages on the GEFT East/West Signs, and to the extent the Defendant may require said improvement location permits, or other related approvals, requiring the Defendant to grant said improvement location permits, or other related approvals; or alternatively preventing the City from denying and/or delaying disposition of said improvement locations permits, or other related approvals;

K.      On the Eleventh Cause of Action, for an Order (i) vacating the BZA 1's denial of the West Variance, (ii) declaring that GEFT need not seek a variance to display digital content on the West Sign; and (iii) enjoining the City from requiring GEFT to obtain a variance before displaying digital content on the West Sign.

L.      On the Twelfth Cause of Action, for an Order (i) vacating the BZA 1's denial of the East Variance, (ii) declaring that GEFT need not seek a variance to display digital content on the East Sign; and (iii) enjoining the City from requiring GEFT to obtain a variance before displaying digital content on the East Sign.

M.    For an award to Plaintiff of costs, disbursements, and reasonable attorneys' fees and expert fees incurred by Plaintiff in connection with this action pursuant to 42 U.S.C. § 1988; and

N.    All other relief just and proper in the premises.


Respectfully submitted,

LEWIS WAGNER, LLP


/s/ *A. RICHARD M. BLAIKLOCK*
A. RICHARD M. BLAIKLOCK, #20031-49
KEENAN M. JONES, #31044-49
*Counsel for GEFT Outdoor, L.L.C.*

LEWIS WAGNER, LLP
501 Indiana Avenue, Suite 200
Indianapolis, IN 46202-6150
Phone:   317-237-0500
Fax:      317-630-2790
Email:   rblaiklock@lewiswagner.com
           kjones@lewiswagner.com

## **VERIFICATION**

I, Jeffrey S. Lee, am a citizen of the United States and the owner of GEFT Outdoor, L.L.C., plaintiff in this action. I have read the foregoing Amended Complaint for Damages, Declaratory Relief, and Permanent Injunction, and Verified Petition for Judicial Review, and declare under penalty of perjury under the laws of the United States of America that the facts identified in the Eleventh and Twelfth Causes of Action (paragraphs 198 - 210, 212 – 224, and all other paragraphs identifying foundational facts and/or definitions) are correct and true to the best of my knowledge and belief, and that those factual matters that are stated upon information and belief are believed by me to be true.

_____
JEFFREY S. LEE

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on February 5, 2016, a copy of the foregoing was filed electronically. Notice of the filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access the filing through the Court's system:

Pamela G. Schneeman
Daniel Bowman
Office of the Corporation Counsel
City-County Building, Ste 1601
200 East Washington St.
Indianapolis, IN  46204


         */s/ A. RICHARD M. BLAIKLOCK*
         A. RICHARD M. BLAIKLOCK